410 P.2d 683

TUCSON WAREHOUSE AND TRANSFER COMPANY, an Arizona corporation, Appellant,

v.

The ARIZONA CORPORATION COMMISSION, E. T. "Eddie" Williams, Jack Buzard, and John Clark, as members of said Commission; and Reliance Truck Company, an Arizona corporation, Appellees.

No. 1 CA–CIV 155.

Court of Appeals of Arizona.

Feb. 8, 1966.

Robertson, Childers, Burke & Drachman, by Frank E. Drachman, Jr., Tucson, for appellant.

Darrell F. Smith, Atty. Gen., Phoenix, by Sidney M. Rosen, Asst. Atty. Gen., Phoenix, for appellees.

A. Michael Bernstein, Phoenix, for intervenor-appellee.

CAMERON, Judge.

This is an appeal from a judgment of the lower court affirming a decision of the Arizona Corporation Commission.

We are called upon to determine whether a common motor carrier for transportation of certain goods "to and from all points and places within the State of Arizona" with a base of operations at Phoenix, Arizona, may maintain a yard or "alternate headquarters" in Tucson or other places within the State of Arizona. The facts as are necessary for a determination of this matter on appeal are as follows:

Plaintiff, Tucson Warehouse and Transfer Company, a corporation, holds a certificate of convenience and necessity from the Arizona Corporation Commission granting to them "vicinity rights" for freight and baggage in Tucson and area, state-wide permits for "machinery, structural steel, prefabricated steel tresses and contractor's equipment and outfits", and certain household goods as defined by the Interstate Commerce Commission under rules and regulations prescribed under the provisions of the Motor Carriers Act. Tucson Warehouse also possesses permits for transportation of other goods including explosives and dangerous gases.

Reliance Trucking Company, the real party in interest, holds a certificate of convenience and necessity from the Arizona Corporation Commission authorizing it to transport certain commodities, supplies and equipment between all points in the State of Arizona with its headquarters in Phoenix, Arizona. The testimony indicates that the bulk of Reliance Truck Company's business is solicited and obtained from the construction industry. In addition to the intrastate business of Reliance, the company also holds authority from the Interstate Commerce Commission to transport certain commodities serving all points and places in the State. Reliance also is in the crane and rigging business. The headquarters of Reliance in Phoenix contains over 8 acres of ground with complete shop facilities employing some 18 to 20 people. Complete office facilities are maintained in Phoenix for all records of the company as well as central dispatching facilities with radio connection to equipment and other yards. Storage facilities on the remainder of the 8 acres in Phoenix are used to park equipment and hold commodities in transit. Reliance operates some 53 diesel tractors and approximately 150 trailers, in addition to maintaining between 20 to 30 pickup trucks and service trucks. It also has various cranes and forklifts used in the loading and unloading of the commodities transported. A vast majority of this equipment is permanently stationed in the Phoenix yard. At the time of the hearing below, Reliance had a total of 81 employees.

In January of 1961, Reliance established a "yard" in Tucson, Arizona. The yard consists of approximately one and a half acres of ground and contains a house trailer, radio facilities to the Phoenix office, and, on an average, three diesel tractors and five trailers. Six employees are stationed in the Tucson area. There are no shop facilities in Tucson, and all the shop

work is done in Phoenix except for emergency work and tire change. All of the company books and records are kept and maintained in the Phoenix office. The business conducted at the Tucson yard is 90 to 95% interstate commerce, the yard being adjacent to the railroad. A great portion of Reliance's business is derived from rail movement or interlining with other truck lines. Reliance advertises in the yellow pages in Tucson, and solicits business in the Tucson area.

Plaintiff, Tucson Warehouse, brought an action before the Corporation Commission of Arizona, alleging that Reliance is attempting to establish an "alternate headquarters" in the Tucson area without first applying to the Arizona Corporation Commission for authority to establish such facilities. It is admitted that at no time has there ever been a hearing before the Arizona Corporation Commission to establish that the public convenience and necessity would be served by the establishment of Reliance Truck Company's headquarters or base of operations in the Tucson area. It is the contention of Tucson Warehouse, which is undisputed, that their services are adequate and that no complaint has been made about the inadequacy of service in the Tucson area.

The Corporation Commission after notice and hearing, filed its opinion and order finding, among other things:

"2. That Reliance Truck Company has at all times maintained its 'headquarters' at Phoenix, Arizona.

"3. That the establishment of a yard in Tucson, Arizona, and the employment of permanent employees residing in Tucson, Arizona, and working from said yard, the maintenance of equipment at the Tucson, Arizona yard, and the solicitation of business as indicated by the evidence does not violate any restriction in the respondent's certificate of convenience and necessity and does not violate any of the rules and regulations of this Commission or the laws of the State of Arizona.

"4. That a common carrier authorized by its certificate of convenience and necessity to serve the public in the State of Arizona has an obligation to provide adequate facilities to serve all of the public in the State of Arizona and said necessary facilities shall be provided by the common carrier without the necessity of an order from this Commission.

"5. That the evidence adduced does not warrant the granting of the relief prayed for by the complainant."

Pursuant to Section 40–254 A.R.S., the plaintiff filed an action in Superior Court of Maricopa County to set aside the order of the Commission. Reliance intervened. Section 40–254, subsection E, reads in part as follows:

"In all trials, actions and proceedings the burden of proof shall be upon the party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by clear and satisfactory evidence that it is unreasonable or unlawful."

Trial was held before the court without a jury, and the court entered judgment in favor of the Arizona Corporation Commission and against the plaintiff, finding in part as follows:

"That the defendant Arizona Corporation Commission did not act arbitrarily, capriciously, unlawfully or unreasonably in issuing its Opinion and Order, Decision No. 34623 dated July 3, 1963 nor in issuing its Opinion and Order, Decision No. 34657 dated July 15, 1963."

Judgment was for the Corporation Commission and the intervenor (Reliance) against the plaintiff (Tucson Warehouse) and for costs incurred. From said judgment plaintiff prosecutes this appeal.

On an appeal, the judgment of the Superior Court is presumed correct if there is reasonable evidence in the record to sustain it, and we will not substitute our discretion for that exercised by the court be-

low. Arizona Corporation Commission v. Pacific Motor Trucking Company, 97 Ariz. 157, 398 P.2d 114 (1964), Corporation Commission of Arizona v. Peoples Freight Line, Inc., 41 Ariz. 158, 16 P.2d 420 (1932). It is, of course, undisputed that the intervenor, Reliance Truck Company, had a certificate of convenience and necessity as a common carrier for the transportation of certain commodities between all points and places within the State of Arizona. The finding by the Commission, affirmed by the lower court, was that the facilities in Tucson served Reliance's activities in both its intra and inter-state operations and were necessary to its operations, that the facilities in Tucson were not a principal place of business or headquarters, and that Reliance's principal place of business or headquarters was at all times located in Phoenix. The decision was reasonably, if not amply, supported by the evidence and will not be disturbed by this Court.

It is the position of the appellant, Tucson Warehouse, that the placing in operation of Reliance's yard in Tucson as a matter of law, constitutes an alternate base of operations or headquarters and that before Reliance may open and operate this facility, it must comply with A.R.S. 40–607, subsec. C, as amended, which reads in part as follows:

"* * * [W]hen an applicant requests a certificate to operate over a route, or in a territory already served by a common motor carrier, the commission may, after hearing, issue a certificate only when the existing common motor carrier operating over the route or serving the territory, will not provide service deemed satisfactory by the commission."

The record does not indicate that the various carriers in the Tucson area were failing to provide proper service or that the service was in any wise unsatisfactory. We do not, however, believe that to be an issue in the case at bar. Reliance has operated in the Tucson area for some time by virtue of its state-wide permit allowing it to serve any point within the State with its princi-

pal headquarters located in Phoenix, Arizona. There is no indication that Reliance is attempting to move its headquarters to Tucson. In fact, the testimony indicates quite the contrary. The facilities and yard in Tucson enables Reliance to provide better service to its customers and to discharge its "obligation to provide adequate facilities to serve all of the public in the State of Arizona." We feel and therefore hold Reliance might establish said facilities without first obtaining an order from the Commission.

It is true that the State of Arizona is a "regulated monopoly" state in this field. Arizona Corporation Commission v. Fred Harvey Transp. Co., 95 Ariz. 185, 388 P. 2d 236 (1964); Old Pueblo Transit Company v. Arizona Corporation Commission, 84 Ariz. 389, 329 P.2d 1108 (1958). This doctrine is based on the premise that the public interest is best served by limiting the number of competitors in a certain field rather than allowing unlimited or "free wheeling competition". Where in a particular field a few may profit, many may perish. Reliance has been one of the limited "few" competitors of Tucson Warehouse for some time, though both have permits in other non-competitive fields. It would appear that the complaint is not that Reliance is competing, for Reliance, under its certificate of convenience and necessity has always been a competitor, but that Reliance is competing too effectively, by extending its ability to better serve the Tucson area.

Appellant cites two recent Colorado cases as support for its position. The first is Public Utilities Commission v. Stanton Transp. Co., 153 Colo. 372, 386 P.2d 590 (1963). In this case, the Colorado Public Utilities Commission, in granting the transfer of a private motor carrier's permit, restricted the transferee to maintain his operational headquarters in Craig, Colorado. The court stated in that decision:

"To sum up, we think that the legislative scheme involved in the regulatory statutes clearly gives the Commission the power to consider the effect of a

transfer of a private carrier authority on the operations of existing common carriers and to impose such reasonable restrictions as are necessary to conform the transfer to the public interest." Public Utilities Commission v. Stanton Transp. Co., supra, 386 P.2d 590, 594 (1963).

We are not concerned here with the transfer of an "operational headquarters". The "operational headquarters" of Reliance having been and is in Phoenix, Arizona. Appellant cites also the case of Resler v. North Eastern Motor Freight, 154 Colo. 52, 388 P.2d 255 (1964), in which the Supreme Court of Colorado upheld a judgment finding the holder of a private motor vehicle carrier permit in comtempt for violating an injunction prohibiting the maintenance of more than one office from which to operate as a licensed private carrier, and the Supreme Court of Colorado upheld again the power of the Public Utilities Commission to restrict the carrier to one office for the operation and solicitation of business. Such is not the case at bar. Our statute 40–607, subsec. A, par. 2 requires only that the applicant for a certificate of convenience and necessity list his "principal place of business" and by inference is limited to the place designated by the certificate as his headquarters or home office. He is not prevented in maintaining alternate or auxiliary "yards" as the demands of his operation dictate.

■ We feel and therefore hold that under the facts in the instant case, even under a regulated monopoly theory such as prevails in the State of Arizona, that the maintenance of auxiliary facilities in Tucson was not such as would violate the provisions of the certificate of convenience and necessity held by Reliance, and that the decisions of the Commission and the court below are reasonably supported by the evidence and the law. As has been stated:

"By A.R.S. § 40–254, any party in interest may commence an action in the superior court to set aside an order or decision of the Commission on the ground that the order or decision is unlawful or unreasonable. The burden of proof is upon the party seeking to set aside the action of the Commission 'to show by clear and satisfactory evidence that it is unreasonable or unlawful'. Even if this state were not governed by principles applicable to regulated monopolies, the trial court could not have found that the action of the Commission was unreasonable." Arizona Corporation Commission v. Fred Harvey Transp. Co., supra, 95 Ariz. 185, at 189, 388 P.2d 236, at 238.

The decision of the court below is affirmed.

STEVENS, C. J. and DONOFRIO, J., concurring.