470 P.2d 682

The EMPLOYERS' LIABILITY ASSUR-
ANCE CORP., Ltd., Appellant,

v.

GLENS FALLS INSURANCE COMPANY,
Appellee.

No. 2 CA–CIV 778.

Court of Appeals of Arizona,
Division 2.

June 12, 1970.

Mesch, Marquez & Rothschild by Doug-
las H. Clark, Jr., Tucson, for appellant.

Murphy, Vinson & Hazlett by John U. Vinson and Carl E. Hazlett, Tucson, for appellee.

HOWARD, Chief Judge.

This is a controversy between two insurance liability carriers that insured, under separate policies, Mr. and Mrs. M. O. Simpson. A lawsuit was brought against the Simpsons by Mrs. M. Heiderich. Mrs. Heiderich obtained a judgment which appellant contends should be paid equally by the two carriers and which appellee contends should be prorated on a five-sixths and one-sixth basis.

Both parties agree that unless there was an agreement to modify the terms of the two policies, appellant would be liable for five-sixths of the judgment and appellee would be liable for one-sixth of the judgment.

This action was brought by appellant to obtain the balance of the monies it believed appellee owed, namely, the difference between the one-sixth that appellee paid and the one-half for which appellant claims is due.

Shortly after the accident occurred, and at least one year before action was instituted, the claims managers of both insurance companies had a meeting. At that time they agreed, on behalf of their companies, to cooperate in the adjustment of the claim and to share the expenses as well as the payment of the claim on an equal basis. After suit was instituted, the claims managers agreed among themselves that appellee's attorney would be retained to defend the action. They further agreed that they would continue to work in concert and that appellant's claims manager would be kept fully advised and that he was to, and did, receive copies of all reports. Appellant's claims manager testified that he retained the right to terminate the attorney's employment at any time.

On April 16, 1962, appellee's claims manager sent a letter to the attorney stating that the attorney's fees and the amount of any judgment would be shared equally by the two insurance companies. On November 11, 1962, appellee's claims manager sent a memorandum to his superiors setting forth the equal sharing arrangement. Appellant's claims manager testified that he assumed that the appellee's claims manager missed the proration feature of the policy.

He further testified that this agreement was never to his knowledge confirmed by any other employee of appellee. He said that he did not even know whether appellee's claims manager had authority to enter into the agreement but merely assumed that he did. He stated that, in all his years in the claims business, he never had occasion to obligate a company for more than its pro rata share of liability coverage. He said that he did not know of any benefit received by appellee under the alleged agreement nor did he know of any detriments suffered by appellant. He also testified that even if there had not been this agreement, appellant would not have managed and handled the file in any other manner.

Appellee's claims manager testified that he had complete authority over all files where the reserves were less than $5,000.00 until such time as suit was filed. The institution of legal proceedings terminated such complete authority. Under no circumstances did he have authority to enter into an agreement to alter the conditions of the policy contract.

## EXPRESS AUTHORITY

Appellant contends that appellee's claims manager had actual authority to enter into an agreement with the appellant to share the attorney's fees, costs of suit, and payment of judgment on an equal basis. Appellee states the proposition that a principal is not responsible for a contract which he has neither directly nor indirectly authorized and when one deals with another knowing him to be an agent the burden is upon that person to prove the agent's authority. Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042 (1916).

**364**

In meeting this burden of proof, the *statement or testimony of the alleged* agent is not competent to prove either (a) the agency relationship or (b) the scope of that agency. Both must be proven by the acts, statements or conduct of the principal. Udall, Arizona Law of Evidence, (1960) § 119 at 252. Thus, the testimony or statements of appellee's claims manager would be incompetent to prove the nature and extent of the agency. The only other witness who was called—that is appellant's claims manager, testified that he did not know the extent of the authority of appellee's claims manager.

## IMPLIED AUTHORITY

Thus, there being insufficient evidence to prove express authority, we now turn to the question of implied authority. Appellant claims the authority was implied from the fact that the claims manager had so-called "complete" authority on all claims with a reserve of less than $5,000.00. Appellee points out that this is contrary to their claims manager's testimony. He testified that he did not have authority to agree to alter the conditions of the policy regardless of the reserve or his draft authority; that he did not have authority to hire attorneys; and that he had to report on all suit files.

In *Brutinel* the court made it clear that implied authority is authority to do those acts within the ordinary and usual scope of the business which the agent is empowered to transact. Appellant has not offered evidence to prove that claims managers ordinarily and usually have authority to alter the terms of the insurance policies. The testimony of appellant's claims manager was that in all his years in such capacity he had never done so and appellee's claims manager testified that he did not have such authority.

## APPARENT AUTHORITY

Section 8 of the Restatement of Agency (Second) defines apparent authority as:

" * * * the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." At 37.

By definition, there must be a manifestation by the principal to the third person. There was no proof of any manifestation by the appellee that its claims manager had the authority to alter the terms of its policy contract. As the appellant points out, one of the essential elements of apparent authority is that the third person knew of the facts, and acting in good faith, believed and had reason to believe, that the agent possessed such authority. Appellant's claims manager testified that he did not know whether or not appellee's claims manager had such authority, that he merely assumed that he did and also that he knew that appellee's claims manager had made a mistake.

## CONSIDERATION

Appellant then raises the question that if appellee's claims manager had such authority, was the agreement supported by good consideration. We believe that there was sufficient evidence for the trial court to find that the agreement was not supported by adequate consideration. Appellant claims that a change of position in reliance upon a promise or representation may supply consideration for the promise. However, there was no evidence that appellant did in fact, change its position to its detriment.

## AGENCY BY ESTOPPEL

Appellant's claim of estoppel is without merit. There was no proof that appellant relied upon such appearance of authority, changed his position and was, therefore, injured or suffered loss. Appellant's claims manager testified that he did not relinquish all control over the file; that he retained the right to terminate the attorney's employment at any time; that he received copies of every report given to ap-

pellee's claims manager; that he did not know of any detriment suffered by appellant as a result of the alleged agreement; and that appellant did not do anything differently in managing and handling the file than it would have done if there had not been this agreement.

There is no evidence to show that appellant had a right to rely upon the promise to share the loss equally especially in view of the fact that its claims manager testified that he knew a mistake was made by the promisor, appellee's claims manager. Appellant's contention that the doctrine of equitable estoppel applies does not survive the scrutiny of this court. That doctrine is based upon good faith and its purpose is to protect against injustice and fraud. It prevents a person from repudiating any of his acts, admissions or representations which have been relied upon by the person to whom they were directed.

■ As we pointed out previously, appellant did not act in good faith as it knew that appellee's claims manager had made a mistake. Secondly, any alleged reliance upon the promise by appellee did not in any way influence appellant's position or actions. Thus, in the opinion of this court there was no agency by estoppel.

SUFFICIENCY OF THE EVIDENCE

The trial court made certain findings of fact and conclusions of law.[1]

■ The basic issue before the court is whether there was sufficient evidence in the record to support these findings of fact and conclusions of law. The judgment of the trial court is presumed to be correct if there is reasonable evidence in the record to sustain it and the reviewing court will not substitute its discretion for that exercised by the court below. Tucson Warehouse and Transfer Co. v. Arizona Corporation Commission, 2 Ariz.App. 565, 410 P.2d 683 (1966).

We have examined the record on appeal and find that there is sufficient evidence in the record to support the findings of fact and conclusions of law of the trial court. As this court stated in Van Emden v. Becker, 6 Ariz.App. 274, 275, 431 P.2d 915, 916 (1967):

"The reviewing court will not upset the findings of the trial court where there is a conflict in competent evidence. It is not our prerogative to weigh the evidence and determine the credibility of the witnesses."

In State ex rel. Herman v. Southern Pacific Co., 8 Ariz.App. 238, 242, 445 P.2d 186, 190 (1968) the court held:

"The appellate court will not weigh the evidence to determine its preponderance upon a disputed fact. Its only concern is whether the facts have been established which might reasonably support the judgment."

Since appellant's argument is based upon the premise that the court incorrectly weighed the evidence rather than that there was no evidence upon which the trial court could have found for appellee, and in view of the cases herein above cited, we must uphold the trial court's judgment.

Judgment affirmed.

KRUCKER and HATHAWAY, JJ., concur.

---

1. "1. Plaintiff and defendant are insurance companies duly authorized to transact insurance business within the State of Arizona.
2. At all times material both plaintiff and defendant had issued insurance policies insuring premises owned by M. O. Simpson and Star Simpson, husband and wife, which indemnified said insureds against claims for personal injuries making the plaintiff and defendant coinsurers of the insureds as well as the premises of the insureds.
3. On December 1, 1960, Margarete Heiderich sustained personal injuries while upon the insureds' premises.