General Motors Acceptance Corporation (GMAC), as plaintiff, filed an action against Everette Smith and First Dallas County Bank (Bank) with counts in detinue and conversion for the recovery of, or for the value of, an automobile in Smith's possession but subject to conflicting claims of a security interest by GMAC and the Bank. By amendment, GMAC later deleted the Bank as a defendant with respect to the counts in detinue and conversion, but added a third count seeking a declaratory judgment that GMAC's security interest had priority over the Bank's. The Bank also sought a declaratory judgment determining the priority of the conflicting security interests. The lower court ruled in favor of GMAC. This court granted a writ of certiorari to the Alabama Court of Civil Appeals after that court reversed the order of the circuit court for Dallas County.
This case arose out of a dispute as to whether Everette Smith took title to a 1980 Pontiac automobile free of GMAC's security interest. The automobile in question was originally purchased by Julius Davis, for his personal use, from Marion Motor Sales in Marion, Alabama, on April 19, 1980. Davis made a down payment and financed the balance with the proceeds of a loan from GMAC. As required by the Alabama Uniform Certificate of Title and Antitheft Act, Code 1975, §§ 32-8-1 through -87, an application for certificate of title was filed, and subsequently a certificate for the automobile was issued showing Julius Davis as owner and GMAC as first lienholder. The terms of the agreement provided for 48 monthly installment payments beginning June 1, 1980.
Later in the year, on November 12, 1980, Smith purchased the automobile from Davis Motor Company, a business in Selma, Alabama, then owned and operated by Julius Davis. Smith made a small down payment and financed the balance of the purchase price with the proceeds of a loan obtained from the First Dallas County Bank. The loan gave the Bank a security interest in the automobile. In conjunction with that sale, Davis, an authorized title agent approved by the State Department of Revenue, filled out the appropriate title applications and delivered a copy to the purchaser. In so doing, Davis failed to note the prior lien held by GMAC. Davis did not pay GMAC the balance due on his loan and, thus, did not obtain from GMAC the original certificate of title on the vehicle. GMAC, upon discovering Davis had sold the car, filed its complaint. *Page 466 
The sole issue presented on this appeal is whether the Court of Civil Appeals erred in holding that Everette Smith and First Dallas County Bank were protected under Code 1975, §§ 7-9-307 (1) and 32-8-60, thereby taking priority over GMAC's security interest in that vehicle. We hold that that court did not err, and we affirm.
First, petitioner argues that Code 1975, § 7-9-307 (1), is limited in its operation to "inventory and/or floor plan financing" arrangements. While these kinds of "financing" plans are typical of the situations contemplated by this section, we do not agree that the facts of this case fall outside its purview. That section provides:
 "A buyer in ordinary course of business (subsection (9) of section 7-1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."
Code 1975, § 7-9-307 (1). This section refers to the definitional section, § 7-1-201 (9), which states:
 "`Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. `Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."
Code 1975, § 7-1-201 (9).
It is apparent that these sections apply to sales from inventory by a person who sells goods of that kind. We hold that the sale by Davis from his used car lot constituted a sale from inventory. Davis, owner of Davis Motor Company, was in the business selling goods of this kind. Smith's purchase, evidenced by a bill of sale in the company's name, falls within the literal language of the section.
GMAC argues that the car was a consumer good when it was sold to Davis and that it remained a consumer good regardless of the actions taken by Davis. This is not the case. White and Summers deal directly with this kind of situation:
 "Note well that 9-109 does not classify goods according to design or intrinsic nature but according to the use to which their owner puts them. It follows that as use changes, either because the owner finds some new task for the goods or because an owner sells the goods to another who uses it for another purpose, the classification of the goods will also change."
J. White R. Summers, Uniform Commercial Code § 23-7 (2d ed. 1980). (Emphasis added.)
In this case it is clear that Davis, the debtor, found a new use for the goods when he sold the car from the used car lot. When the car was placed on the lot it became inventory and thus falls within § 7-9-307 (1). Code 1975, § 7-9-401 (3), provides that the secured party's perfection will continue when the classification changes; however, perfection is not the issue here. There is no comparable provision making § 7-9-307 (1) inapplicable in these cases. While the secured party is not required to police the collateral to maintain perfection, he must do so in order to avoid § 7-9-307 (1).
It is clear that § 9-307 (1) of the U.C.C. was written to protect the consumer who purchases goods from a dealer by permitting the purchaser to take good title free of any security interest created by the seller.
 "The rule reflects a belief that it would be impractical to expect buyers to search through the records of financing statements every time they purchased an item, even though they purchased in the ordinary course of their seller's business, and that it would likewise be unacceptable to put the risk of loss on the purchaser when *Page 467 
the seller defaults on a loan supported by a security interest in the goods. The secured party is in a better position to look out for himself in this situation than is the buyer."
R. Braucher R. Riegert, Introduction to CommercialTransactions, § 5-4 (1977). See also Antigo Co-op Credit Unionv. Miller, 86 Wis.2d 90, 271 N.W.2d 642 (1978).
The second argument raised by GMAC is that if the Uniform Certificate of Title and Antitheft Act is not complied with the transfer and subsequent mortgage are null and void. However, the Act does not apply to a security interest created by a seller who holds a vehicle for sale.
Again, when Davis put the car on the used car lot it became a vehicle held for sale by a dealer. The policy considerations that mandate this result under Code 1975, § 7-9-307 (1), require the same result under §§ 32-8-1 through -87.
Further, in the case before us, Davis, an authorized title agent, secured Smith's signature on an application for certificate of title. Thus, it appears that Smith was justified in believing that Davis would submit the application to the Department of Revenue and secure the certificate on Smith's behalf.
Thus, we hold that Smith is protected by Code §§ 7-9-307 (1) and 32-8-60. When Smith purchased the car he took it free of GMAC's security interest. Thus, the security agreement between Smith and First Dallas County Bank is a valid one, and the Bank, in effect, receives the benefit of Smith's protection under Code 1975, § 7-9-307 (1). The underlying policy of protecting both purchasers of collateral and secured parties is served by this approach. GMAC retains a security interest in the proceeds of the sale of the collateral received by Davis under Code § 7-9-203 (2), and, in the event of the insolvency of this debtor, GMAC will remain a secured party as to those proceeds. The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
EMBRY, J., not sitting.