719 P.2d 301

**VALLEY BANK OF NEVADA, a Nevada State Banking Association, Plaintiff-Appellee, Cross-Appellant,**

v.

**JER MANAGEMENT CORPORATION, an Arizona corporation; James E. Reid, as trustee of JER Management Corporation Pension Plan; and Bill Blair, Defendants-Appellants, Cross-Appellees.**

**No. 1 CA–CIV 7942.**

Court of Appeals of Arizona, Division 1, Department A.

May 1, 1986.

**416**

Wentworth & Lundin by David McCord and William J. Reckling, III, Phoenix, for plaintiff-appellee, cross-appellant.

Reed, Goldstein & Ayers, P.C. by David B. Goldstein and Kenneth D. Nyman, Phoenix, for defendants-appellants, cross-appellees.

## OPINION

KLEINSCHMIDT, Judge.

This appeal is from a judgment in favor of plaintiff-appellee Valley Bank of Nevada (bank) in its action to recover on two checks on which defendants-appellants JER Management Corp. and Bill Blair had stopped payment. We affirm.

## FACTS

The payee of the two checks in issue was Simone Nevada Productions, Inc., (SNP).

SNP was incorporated on July 17, 1981. The minutes of SNP's first meeting of its board of directors named one Joey Simone as president, secretary and treasurer. The bylaws adopted at that meeting stated that the treasurer would have custody of the corporation's funds and have the authority to indorse and deposit for collection all commercial paper. The minutes of the meeting discuss authorizing a bank as depository, but do not designate a specific bank for that purpose. No resolution authorizing a depository was ever adopted.

On July 20, 1981, Las Vegas attorney John Peter Lee introduced Joey Simone to Earl Evenson, a vice-president of Valley Bank of Nevada and manager of the bank's Plaza Branch. Lee immediately left, but Simone stayed and opened a payroll checking account and a general checking account in the name of SNP. Evenson did not require Simone to produce the corporate documents authorizing such accounts although this was a procedure required by the Nevada Secretary of State's office and by the bank's own policies.

Thereafter, Simone entered into a transaction with appellants whereby appellants were to purchase shares of SNP's stock. On August 5, 1981, Blair and JER Management Corporation each wrote $37,500 checks on Phoenix banks payable to SNP.

The next day, August 6, 1981, a man who identified himself as Joey Simone brought the two checks to a different branch of the bank. Both checks bore rubber-stamped indorsements in the following language:

Pay to the order of
VALLEY BANK OF NEVADA

94–72 Plaza Branch 94–72

For deposit only
SIMONE NEVADA
PRODUCTIONS INC.

General account
3650 LAS VEGAS BLVD SOUTH

LAS VEGAS, NEVADA 89109

014072413

The man spoke to Wayne Pollard, a loan officer. Pollard had never seen the man

before and could not recall asking to see any identification. The man initially asked Pollard to cash the checks, but Pollard refused. The man then requested that he be given "immediate credit" for the checks in the SNP account. Pollard initially declined to authorize immediate credit, but then telephoned Evenson, who had opened both accounts. Evenson told him not to give immediate credit since the checks were out-of-state. The man then asked Pollard to call the banks on which the checks were drawn. Pollard did so and was told by both that sufficient funds were on deposit to cover the checks and that payment of the checks was "guaranteed." After noting these conversations on the backs of the checks, Pollard ˋinitialed them, indicating thereby that immediate credit would be given. The man deposited the checks in SNP's general checking account.

On the following day, August 7, 1981, SNP transferred $40,000 out of the general account by wire. That same day, appellants placed stop payment orders on both checks through their banks in Phoenix because they believed Simone had misrepresented the assets of SNP. Valley Bank of Nevada paid an additional $31,785 in checks on the SNP general account before it received the stop payment notices on August 12 and 14, 1981. On September 22, 1981 the bank transferred $20,847.21 from SNP's payroll account to the general account to reduce the bank's losses. Its net loss was $50,937.79.

The bank thereafter brought this action against appellants as the drawers of the two checks. *See* A.R.S. § 47–3413(B). The bank's amended complaint alleged that it took the checks as a holder in due course. Appellants' amended answer denied that SNP's indorsements were authorized, alleged that the bank was neither a holder nor a holder in due course of the two checks, and further alleged that the bank had breached a duty of care to appellants in its handling of the checks. Ruling on cross motions for summary judgment, the trial court held as a matter of law that the bank was a holder of the checks within the meaning of A.R.S. § 47–1201(20), that it

gave value for the checks to an extent to be determined at trial, and that it took the checks in good faith. The trial court denied summary judgment on the issue of whether the bank took the checks with notice of a claim or defense against them, holding that there were disputed fact issues on that point. After a trial to the court, the trial court made the following findings of fact and conclusions of law:

1. Plaintiff Valley Bank of Nevada (VBN) accepted the two $37,500 checks for deposit to account #014072413 of Simone Nevada Productions, Inc. (SNP) without notice of any defense or claim to the checks on the part of any person.

2. VBN did not receive notice that payment on the checks had been stopped until Aug. 12, 1981 in the case of the check drawn on Valley National Bank (Exhibit 7) and until Aug. 14, 1981 in the case of the check drawn on First National Bank (Exhibit 6).

3. VBN did not pay any checks on or honor any withdrawals from SNP account #014072413 after Aug. 11, 1981.

4. VBN gave value for the two checks equally in the form of withdrawals or charges to account #014072413 after Aug. 5, 1981 and before Aug. 12, 1981 to the extent of $71,785.00, which was partially offset by VBN charging another account in the amount of $20,847.21, which also applies equally to the two checks.

5. Joey Simone attempted to get VBN to cash the two checks after same had been stamped endorsed for deposit only to SNP account #014072413 at VBN.

6. After refusing to cash the two checks, VBN nevertheless accepted them for deposit and gave immediate credit thereon in account #014072413.

7. At the time of giving immediate credit, VBN knew: a) Joey Simone was a signatory on account #014072413 to withdraw funds with only one signature. b) Account #014072413 had been opened only since July 20, 1981.

8. VBN had a duty to the drawers of the two checks, which it accepted for deposit, to follow reasonable commercial standards with regard thereto.

9. No evidence has been presented as to what the reasonable commercial standards would be to which VBN had a duty to adhere in the circumstances of this case, nor as to whether those standards were met by VBN.

10. Consequently, the Court is unable to find that VBN had a duty as to the drawers of the two checks to anticipate that payment would be stopped on the two checks it accepted for deposit, or that VBN was negligent as to the drawers of the two checks in granting immediate credit thereon, or that it otherwise breached its duty of care as to the drawers of the two checks.

11. VBN is a holder in due course as to the two $37,500 checks.

12. VBN is entitled to Judgment against the drawers of the two checks, each in the amount of one half of $50,937.79, or in other words $25,468.89.

In a minute entry of June 28, 1984 the trial court denied the bank's petition for award of attorney's fees. Formal judgment in accordance with the trial court's rulings was entered that same date. This appeal followed.

## BANK'S STATUS AS "HOLDER"

Appellants first contend the trial court erred in holding that the bank qualified as a "holder" of the two checks. Before addressing that contention, we first explain why the status of "holder" is legally significant. If the bank was a "holder in due course" within A.R.S. § 47–3302(A), it took the checks free of appellants' alleged defense of fraud in the inducement by payee Simone Nevada Productions, Inc. A.R.S. § 47–3305. Conversely, if the bank did not qualify as a holder in due course, its rights in the checks were subject to appellants' assertion of that defense. A.R.S. § 47–3306(2). To be a holder in due course, the bank first had to qualify as a "holder," that is, a person "in possession of . . . an instru-

ment . . . indorsed to him . . . or in blank." A.R.S. § 47–1201(20). "An indorsement must be written by or on behalf of the holder. . . ." A.R.S. § 47–3202(B).

The question thus becomes whether the indorsements stamped on the backs of the checks in question were written "by or on behalf of" payee SNP, the prior holder—in other words, whether SNP authorized the two indorsements. That question is governed by A.R.S. § 47–3307, which provides:

A. Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue:

1. The burden of establishing it is on the party claiming under the signature; but

2. The signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

B. When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

C. After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course.

Arizona Revised Statutes § 47–3401(B) provides: "[A] signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." Under this statute, where the effectiveness of a signature is put in issue by a specific denial, the signature is presumed to be genuine or authorized, and the party claiming under the signature is not put to his proof until the party making the denial has produced "some evidence" that would support a finding that the signature is forged or unauthorized. The presumption of A.R.S. § 47–3307(A)(2) may thus operate to assist the party claiming under the sig-

nature in discharging the burden of proving that he is "in all respects a holder in due course" as required by A.R.S. § 47–3307(C). *Official Comment,* U.C.C. § 3–307. Further, demonstrating the other party's apparent lack of evidence does not constitute producing "evidence" of forgery or lack of authorization sufficient to rebut the presumption of A.R.S. § 47–3307(A)(2). *First National Bank v. Roy N. Ford Co.,* 219 Va. 942, 948, 252 S.E.2d 354, 358 (1979).

Appellants argue that in the instant case they produced evidence sufficient to permit a finding that SNP did not authorize the rubber-stamped indorsements at issue here, and that the presumption of authorization under A.R.S. § 47–3307(A)(2) was thereby rebutted. In support of that contention appellants cite the following evidence: (1) the provision of the bank's Policy and Procedure Manual requiring that a corporation present a resolution authorizing it to open and maintain an account; (2) SNP's corporate papers, which nowhere purport to authorize the opening of a corporate checking account at Valley Bank of Nevada or elsewhere; (3) testimony by attorney Lee that he did not represent to the bank that any corporate accounts were or would be authorized; (4) the signature card for SNP's general account, which established Joey Simone and Olene Alvarez as authorized signers based on a form resolution on the back of the card executed only by Simone and Alvarez; and (5) the signature card for the SNP payroll account, which required multiple signatures.

■ Appellants' analysis is off the mark. The question on which the listed evidence primarily bears is whether SNP ever generated a written resolution authorizing the opening of a corporate checking account at Valley Bank of Nevada. While this evidence might in some situations help prove or disprove the authority of an agent to indorse and deposit a corporation's check, under the circumstances of this case, the evidence is irrelevant. In this case, there was no evidence of who actually stamped the indorsement on the checks. Thus, the lack of a corporate resolution

expressly authorizing a particular agent to indorse checks is of no help in determining whether these indorsements were authorized since the identity of the agent is unknown. Further, appellant cannot take the position that because there was no written resolution authorizing the accounts, all subsequent indorsements and deposits were unauthorized. A corporate agent may have inherent authority to establish such an account. *See Trust Co. of Georgia v. Nationwide Moving & Storage Co.,* 235 Ga. 229, 233, 219 S.E.2d 162, 166 (1975). The *de facto* existence of the SNP general account at the time of the questioned indorsements was undisputed. Since there was no evidence concerning who actually stamped those indorsements, there was no evidence on which a finding of lack of authorization could have been based. The presumption under A.R.S. § 47–3307(A)(2) that the indorsements were authorized therefore remained unrebutted.

The case on which the appellants rely, *Foremost Insurance Co. v. First City Savings and Loan Ass'n,* 374 So.2d 840 (Miss. 1979), is inapposite. In that case the defendant drawer introduced affirmative evidence that the endorsement in question was a forgery, and the plaintiff depository bank offered no evidence on that point at all. The court understandably held under those circumstances that the presumption of genuineness evaporated, and the trial court was required to direct a verdict for the drawer. In the instant case appellants produced nothing resembling the evidence that operated to rebut the presumption in *Foremost Insurance.* The trial court did not err in ruling that the bank was a "holder" of the checks in question in this case.

### BANK'S STATUS AS "HOLDER IN DUE COURSE"

(a) Good Faith

■ Appellants next contend the trial court erred in holding as a matter of law that the bank took the checks in good faith. We cannot agree. Arizona Revised Statutes § 47–1201(19) defines good faith as "honesty in fact in the conduct or transac-

tion concerned." *See Mecham v. United Bank of Arizona*, 107 Ariz. 437, 489 P.2d 247 (1971). We recently stated in *City of Phoenix v. Great Western Bank & Trust*, 148 Ariz. 53, 712 P.2d 966 (App.1985), quoting from *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 296 Minn. 130, 136, 207 N.W.2d 282, 287 (1973):

> The [good faith] test requires honesty of intent rather than absence of circumstances which would put an ordinarily prudent holder on inquiry in order to constitute good faith. ... [It] is an issue of honesty of intent rather than of diligence or negligence.

148 Ariz. at 58, 712 P.2d at 971. In *City of Phoenix* we also rejected the appellant's attempt to demonstrate the appellee bank's lack of good faith by reference to a *"course of dealing* so irregular in nature that Great Western Bank is shown to have violated its own policy." 148 Ariz. at 58, 712 P.2d at 971. (Emphasis in original.) We held:

> The parties' relationships and contracts are expressly set forth in the Commercial Paper provisions; prior or subsequent events between them cannot alter the terms or understanding of the statutory contract. The focus of the good faith requirement of § 47–1201(19) is on the 'conduct or transaction concerned'; that is, one particular transaction or proceeding. 'Honesty in fact in the conduct or transaction concerned' refers to honesty in a particular transaction or incident. It does not depend on an analysis of preceding and subsequent unrelated and dissimilar events or transactions.

*Id.* In arguing that the bank had failed to act in good faith, the defrauded drawer in *City of Phoenix* pointed to the youth of the depositor, the large amount of the warrant in question, and the fact that the deposit was made soon after the previously unknown depositor had opened the account. After noting that the drawer conceded there was no evidence that any bank employee had acted as the depositor's confederate, we stated:

The facts pointed to by the City do not indicate a lack of good faith on the part of the Bank. The warrant was made payable to the order of the named depositor. It was appropriately endorsed by him and deposited in his account at the Bank. There were no alterations on the face of the warrant nor were there any other suggestions sufficient to invoke a duty to inquire in connection with the deposit. Mere negligence or knowledge of suspicious circumstances is not sufficient to show bad faith. *Valley National Bank v. Porter*, 705 F.2d 1027, 1029 (8th Cir.1983). From these facts the trial court correctly decided as a matter of law that the Bank acted in good faith—with 'honesty in fact in the conduct or transaction concerned.'

148 Ariz. at 59, 712 P.2d at 972.

In the instant case appellants rely on two distinct sets of circumstances as evidence that the bank failed to act in good faith: (1) the bank's failure, in violation of its own rules and procedures, to obtain corporate resolutions from SNP authorizing the checking accounts and naming authorized signatories, and (2) loan officer Wayne Pollard's decision to authorize immediate credit on the two checks against Earl Evenson's directions and his own instincts. In our opinion neither is evidence of lack of "honesty in fact in the conduct or transaction concerned." A.R.S. § 47–1201(19). The "conduct or transaction" on which we focus does not include the lax procedures by which the SNP checking accounts were earlier established. *See City of Phoenix*, 148 Ariz. at 58–60, 712 P.2d at 972–73. At the time the checks were urged on Pollard, the accounts were indisputably in existence. There was no evidence that at that point Pollard had any awareness of the lack of corporate documentation on the accounts. Further, even if such awareness is imputed, there was nothing about that state of affairs that would have tended to indicate that Pollard acted with a dishonest intent in permitting an immediate credit to the account.

The same is true of Pollard's admitted violation of bank procedures. The evident purpose of the bank's rule against allowing immediate credit on checks for large amounts was to protect the bank's own financial interests. It is undisputed that before Pollard authorized immediate credit on the checks, he called both drawee banks and obtained what he apparently took to be adequate assurances that the checks would be honored. Pollard's actions, if ill-advised, were clearly accompanied by a desire to protect the interests of the bank. We are not impressed by appellants' reliance on Pollard's personal misgivings about approving the checks for immediate credit. Pollard's reservations were plainly related to his reliance on the drawee banks' oral assurances that the checks would be paid; there simply was no evidence that Pollard consciously aided in perpetrating a fraud or otherwise acted dishonestly. The trial court did not err in holding there were no triable factual issues on the question of the bank's good faith.

(b) Lack of Notice

 Appellants next urge that the trial court erred in concluding after trial that the bank had taken the checks "[w]ithout notice ... of any defense against or claim to [them] on the part of any person" within the meaning of A.R.S. § 47–3302(A)(3). Again we disagree. Under A.R.S. § 47–1201(25), a person has "notice" of a fact when he has actual knowledge of it, he has received a notice or notification of it, or from all the facts and circumstances known to him at the time in question he has reason to know that it exists. There was no evidence at all tending to establish that the bank had reason to know of appellants' putative fraud defense at the time Pollard allowed the checks to be deposited to SNP's account for immediate credit, and in fact, appellants do not seriously urge that the bank had reason to know of that defense. Appellants argue instead that the circumstances within Evenson's and Pollard's knowledge at the time the checks were deposited charged the bank with notice of a "claim" thereto on the part of

SNP, the depositor corporation. Thus, appellants primarily cite cases in which depository banks had notice of fiduciaries' self-dealing in funds with which they were entrusted. *See, e.g., Sun'n'Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978); *Van Gohren v. Pacific National Bank,* 8 Wash.App. 245, 505 P.2d 467 (1973). In contrast to the cases on which appellants rely, however, there was never any proof in this case that funds of SNP were misappropriated or otherwise put to uses SNP did not authorize. Accordingly, the "claim" by SNP on which appellants rely to negate the bank's status as a holder in due course under A.R.S. § 47–3302(A)(3) was and is purely hypothetical. Even if the circumstances of the deposit were such that the bank had notice of that hypothetical claim, we think such "notice" is beyond the intendment of A.R.S. § 47–3302(A)(3). *Cf. Community Bank v. Ell,* 278 Or. 417, 564 P.2d 685 (1977) (notice of defenses under U.C.C. § 3–302 only disqualifies a party from becoming a holder in due course if the defenses are "against" the instrument). As the court stated in *Frantz v. First National Bank:*

> [The bank's] awareness of [the payee-depositor's] overdrafts or rumored plans to depart is not probative because knowledge of a depositor's financial problems does not impart notice of a defense to a check issued to him by a third party.

584 P.2d 1125, 1127–28 (Alaska 1978).

 Even assuming notice of SNP's hypothetical claim to the checks would have been legally sufficient to deny the bank holder status as a holder in due course, we think the trial court could reasonably have found that the bank lacked such notice on the evidence in this case. Indeed, the trial court found as a fact that the bank lacked notice of any claim or defense to the checks "on the part of any person." When a trial court's findings are based on a reasonable conflict in the evidence, they will not be disturbed on appeal. *Beaudry Motor Co. v. New Pueblo Constructors, Inc.,* 128 Ariz. 481, 483, 626 P.2d

1113, 1115 (App.1981). Here there was ample evidence supporting the trial court's finding. The person who brought the checks to the bank for cash or deposit identified himself as Joey Simone, the payee's corporate president. The rubber-stamped indorsements on the checks were facially regular. Further, the checks were in fact deposited to SNP's general account and as far as the bank was concerned it was SNP that directly benefited from the transaction. The trial court was not bound to conclude from the presenter's initial request for cash that the bank had reason to know of an intent on the part of any person to misappropriate the money the checks represented, and indeed there is no evidence that that occurred. The trial court's finding that the bank took the checks without notice within the meaning of A.R.S. § 47–3302(A)(3) was not clearly erroneous.

### THE BANK'S DUTY OF CARE

Appellants finally contend the trial court clearly erred in holding: "No evidence has been presented as to what the reasonable commercial standards would be to which VBN had a duty to adhere in the circumstances of this case, nor as to whether those standards were met by VBN." They argue the applicable duty was to exercise ordinary care, and that the evidence showed the bank failed to act as would one of ordinary prudence in accepting the checks for immediate credit to SNP's account. The trial court did not err. The circumstances on which appellants rely in support of their contention would tend at most to support the existence of a duty to exercise care to protect the interests of SNP. Appellants have referred us to nothing in the record that would tend to establish that the bank breached any duty to exercise care to protect the interests of appellants. The latter is the only material question under the facts of this case.

### ATTORNEY'S FEES

On cross appeal the bank contends the trial court abused its discretion in refusing to award the bank its attorney's fees under A.R.S. § 12–341.01. We dis-

agree. In denying the bank's request for attorney's fees, the trial court carefully outlined its reasoning, pointing out that both parties were "innocent" and that it could not fault the parties for asserting all possible theories to support their positions. Although we have rejected appellants' contentions on appeal, we cannot agree with the bank that they were frivolous. In *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985), our supreme court recently made clear that trial courts have broad discretion under A.R.S. § 12–341.01(A) and (B) in determining whether to award attorney's fees in cases arising out of contract. In the instant case the trial court's expressed rationale for denying the bank's request for attorney's fees evidences a sensible and well-considered reflection on the parties and the case before it. We find no abuse of discretion.

### ATTORNEY'S FEES ON APPEAL

We in our discretion deny plaintiff-appellee bank's motion for attorney's fees in its appeal.

Affirmed.

GREER and MEYERSON, JJ., concur.