188 N.J. Super. 509 (1983)
457 A.2d 1225
OCEAN COUNTY NATIONAL BANK, PLAINTIFF-APPELLANT,
v.
CHARLES PALMER, GUY H. HESS AND MARY C. HESS, HIS WIFE, AND FIRST COMMERCIAL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1982.
Decided February 28, 1983.
*510 Before Judges BOTTER, POLOW and BRODY.
Dennis J. Cantoli argued the cause for appellant (Sim, Sinn, Gunning & Fitzsimmons, attorneys; Dennis J. Cantoli on the brief).
*511 James P. Brady argued the cause for respondents Guy and Mary Hess (Novins, Farley, Grossman & York, attorneys; James P. Brady on the brief).
Timothy Boderck argued the cause for respondent First Commercial Corp. (Eichler, Forgosh, Gottilla & Rudnick, attorneys; Douglas A. Kent on the brief).
No brief was filed for respondent Palmer.
The opinion of the court was delivered by BOTTER, P.J.A.D.
This appeal concerns the priority of liens on a boat which was sold twice by the same merchant to two different purchasers and was pledged as collateral for two loans without the first lien having been satisfied and discharged. The trial judge gave priority to the lien held by First Commercial Corporation (First Commercial) which had financed the second sale. Based upon our interpretation of the pertinent provisions of Title 12A, N.J.S.A. 12A:9-306(2) and N.J.S.A. 12A:9-307(1), we are compelled to reverse, giving priority to the first secured creditor, notwithstanding the hardship to the innocent purchasers in the second sale.
On October 30, 1978 respondent Charles Palmer (Palmer) purchased a 22-foot Penn Yan boat from Normandy Beach Marina (Normandy Beach) for $13,400. Palmer made a downpayment of $1,900 and financed the balance with Normandy Beach, which took a security interest in the boat. Normandy Beach then assigned all of its rights to the Ocean County National Bank (Ocean County Bank), which timely filed a UCC financing statement with the Monmouth County Clerk's Office and the Secretary of State. The financing statement listed Ocean County Bank as the secured party and was signed by Palmer as the debtor. See N.J.S.A. 12A:9-105(1)(m); N.J.S.A. 12A:9-402(1).
Sometime thereafter, Palmer returned the boat to Normandy Beach with the understanding that it would be sold on his behalf *512 and the Ocean County Bank lien satisfied. On April 30, 1979 respondents Guy and Mary Hess (Hess) purchased the boat from Normandy Beach, apparently out of inventory, for $11,500. Hess made a $4,500 downpayment and financed the balance with Normandy Beach, which took a security interest in the boat. The retail installment contract named Normandy Beach as the seller. Normandy Beach thereafter assigned its rights to First Commercial.[1]
Normandy Beach did not satisfy Palmer's debt to Ocean County Bank and did not obtain a discharge of that bank's lien. When Palmer later discovered that the boat had been sold, he stopped making payments on his loan. Ocean County Bank declared the loan in default and, after locating the boat at the Hess home, repossessed it on May 2, 1980. Following a textbook scenario, Normandy Beach filed for bankruptcy.
Ocean County Bank brought this action to determine the priority of the two outstanding liens. Each of the parties also sought damages and various other remedies. The trial judge fixed the order of priorities in a partial summary judgment, subordinating Ocean County Bank's lien to that of First Commercial. Because some damage claims were not addressed, no final judgment was entered as to all parties. We have determined, however, that the interlocutory nature of this appeal ought not preclude disposition of the merits of the controversy. Therefore, we now grant leave to appeal nunc pro tunc on our own motion. See Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 573, n. 2, n. 3 (1970).
The problem here is that neither Hess nor First Commercial knew that the boat bought by Hess was owned by Palmer. They had no reason to search for a financing statement signed by Palmer as debtor and had no notice that the boat being sold *513 by Normandy Beach was encumbered by a lien previously created by Palmer.[2] Thus, all parties agree that Mr. and Mrs. Hess were buyers in the ordinary course of business, having purchased the boat in good faith and without knowledge of Ocean County Bank's security interest. See N.J.S.A. 12A:1-201(9).
Nevertheless, the general rule governing the sale of encumbered collateral is found in N.J.S.A. 12A:9-306(2), which provides:
Except where this Chapter otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
The resale of the boat by Palmer or Normandy Beach was not authorized by the secured party, Ocean County Bank. Therefore, by reason of § 9-306(2), Ocean County Bank's perfected security interest in the boat continued unless another provision of chapter 9 permitted Hess to take free of that interest or gave First Commercial priority for its lien. See Chemical Bank v. Miller Yacht Sales, supra, 173 N.J. Super. at 101, n. 2.
Hess and First Commercial rely on N.J.S.A. 12A:9-307(1) as a basis for their claimed exception from the general rule established by § 9-306(2). N.J.S.A. 12A:9-307(1) provides, in pertinent part:
A buyer in the ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.
*514 Hess and First Commercial contend that the security interest held by Ocean County Bank was created to some extent by Normandy Beach. Therefore, they argue that § 9-307(1) allowed Hess to purchase the boat free of that security interest. The issue, then, is whether the security interest held by Ocean County Bank was created by Normandy Beach within the meaning of N.J.S.A. 12A:9-307(1). The trial judge held that it was. In his oral opinion he said that Normandy Beach "participated and [was] instrumental" in creating the encumbrance and therefore, as between the second innocent consumer, Hess, and the innocent lienholder, Ocean County Bank, he would interpret § 9-307(1) to protect the second innocent consumer. In his ruling the trial judge relied on Adams v. City Nat'l Bank & Trust Co., 565 P.2d 26 (Okl.Sup.Ct. 1977). Respondents seek to support this interpretation of § 9-307(1). They point out that Normandy Beach was a signatory to the retail installment contract and was a named payee of the promissory note signed by Palmer. They contend that the creation of a security interest in collateral requires the participation of at least two persons and that Normandy Beach was one of those persons. On the other hand, Ocean County Bank argues that a security interest is created by the buyer alone. It contends that the only way for Normandy Beach to have created a security interest in this instance within the meaning of § 9-307(1) would be if it had obtained a loan and pledged its inventory as collateral.
The purpose of N.J.S.A. 12A:9-307(1) is to protect a bonafide purchaser who buys goods in the ordinary course of business from a dealer against the claim of a secured party who has financed the dealer's floor inventory. See N.J.S.A. 12A:9-307(1), New Jersey Study Comment ¶ 2, which states that the concept follows that expressed in R.S. 46:32-12 (§ 9 of the Uniform Conditional Sales Act), namely, that the security interest is lost when the holder leaves the goods with a dealer in those goods with the expectation that they will be sold by the dealer in the ordinary course of business. See Cunningham v. Camelot Motors, 138 N.J. Super. 489, 495-496 (Ch.Div. 1975). In *515 Muir v. Jefferson Credit Corp., 108 N.J. Super. 586 (Law Div. 1970), Justice Handler, then-Judge Handler explained:

Section 9-307(1) is for the exclusive protection of those who buy from merchants in the ordinary course of business and out of inventory. Nevertheless, 9-307(1) limits its protection of such buyers against only a security interest which was "created by [the buyer's] seller." [at 593]
Addressing the same issue presented in the case at hand, the court in Commercial Credit Equip. Corp. v. Bates, 154 Ga. App. 71, 74, 267 S.E.2d 469, 472 (Ct.App. 1980), said that § 9-307(1) "is intended to protect buyers in the ordinary course from the lien claims of creditors who have financed `floor-plan' (inventory) arrangements for the dealer." Therefore, the court held that the security interest in the goods was not created by the dealer within the meaning of § 9-307(1) but was created by the original purchaser (in our case, Palmer). See, also Dugan, "Buyer-Secured Party Conflicts Under Section 9-307(1) of the Uniform Commercial Code," 46 U.Colo.Rev. 333, 345 (1975); Sexton, "Section 9-307(1) of the U.C.C.: The Scope of the Protection Given a Buyer in Ordinary Course of Business," 9 B.C.Indus. & Com.L.Rev. 985-993 (1968). Thus, the "security interest created by his seller" as used in § 9-307(1), refers only to a security interest given by the seller as debtor and does not include any other security interest even though it was created in an agreement to which the seller was a non-debtor party. First Am. Bank v. Hunning, 218 Va. 530, 238 S.E.2d 799 (Sup.Ct. 1977). A contrary conclusion would create an anomalous impact upon the alienability of collateral, depending upon whether the retail buyer finances the purchase through the seller (who then assigns the security interest) or directly with the institutional lender. While innocent purchasers are at risk if goods subject to a lien are entrusted to a dealer for resale,[3] the Georgia court noted in *516 the Commercial Credit case, supra, on subsequent appeal after remand, 159 Ga. App. 910, 911, 285 S.E.2d 560, 561 (Ct.App. 1981), that lenders must have protection for their liens despite subsequent resale of the collateral in order to induce them to finance consumer purchases. Allowing the resale through a dealer to overcome a lien held by a third party, other than one financing a floor plan, would make it too easy to defeat such liens. Some other solution must be found.[4] We reject the expedient solution of the Adams case, supra. There the court was influenced by the fact that the dealer conspired with his own salesman to obtain a loan with a car as security with the intention of reselling the car. To protect the innocent consumer the court found that the salesman was the dealer's agent in obtaining the loan and that, therefore, the security interest was "created by" the dealer within the meaning of § 9-307(1). In the case at hand, however, Palmer was not acting in fraudulent collusion with Normandy Beach when the first financing was obtained. In any case, we find the reasoning in Adams faulty.
We also find unavailing respondents' alternative argument that Normandy Beach was Palmer's agent in reselling the boat and that Hess bought the boat from Palmer who had created the security interest. But this cannot impair Ocean County's Bank lien because Palmer was not in the boat-selling business. See Security Pacific Nat'l Bank v. Goodman, 24 Cal. App.3d 131, 135-137, 100 Cal. Rptr. 763, 766-767 (D.Ct.App. 1972). Although the boat was consumer goods in Palmer's hands, a buyer from him could not take free of a security interest perfected prior to that sale. N.J.S.A. 12A:9-307(2). Thus, Ocean County Bank's lien was protected against the resale *517 to Hess whether sold by Palmer or Normandy Beach. To the extent that Palmer may have had any equity in the boat, however, it was transferred to Hess by operation of N.J.S.A. 12A:2-403(2), Palmer having entrusted the boat to Normandy Beach, a merchant who dealt in boats. Adams v. City Nat'l Bank & Trust Co., supra.
We conclude, therefore, that as between Ocean County Bank and First Commercial, Ocean County Bank's lien has priority under N.J.S.A. 12A:9-312(5) based upon the order of filing. See, also, Chemical Bank v. Miller Yacht Sales, supra, 173 N.J. Super. at 100-101. The judgment below is reversed and the matter is remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] First Commercial subsequently assigned its rights to First National State Bank. However, First National later assigned the contract back to First Commercial. First National had been a party defendant but the action against it was dismissed by stipulation.
[2] We assume that the federal Ship Mortgage Act of 1920, 46 U.S.C.A. § 921 et seq., does not apply since the parties have not relied upon nor asserted that the boat in question was federally documented. See N.J.S.A. 12A:9-302(3) and (4); Chemical Bank v. Miller Yacht Sales, 173 N.J. Super. 90, 99 (App.Div. 1980). The problem may be alleviated if Assembly Bill A-1511 is enacted. The bill would require the owners of certain pleasure boats to obtain titles for their vessels and outboard motors from the Division of Motor Vehicles. The purpose of the bill, ostensibly, is to assist the authorities in investigating boat thefts. Additionally, it may have the same salutary effects in tracing security interests in boats as N.J.S.A. 39:10-11 in relation to motor vehicles.
[3] Section 9-307(1) in the 1952 Official Draft of the Uniform Commercial Code did not contain the phrase "created by his seller." However, the 1952 Official Draft Comment 2 to § 9-307(1) stated that a buyer in the ordinary course of business takes free of a perfected security interest in goods which are part of the inventory of the debtor. Sexton, supra at 988, n. 17. Commentators have suggested that the phrase "created by his seller" should again be eliminated from § 9-307(1) to insure complete protection of the buyer in the ordinary course; however, they recognized that, in its present form, § 9-307(1) refers exclusively to inventory floor plan financing. Dugan, supra; Sexton, supra.
[4] See n. 2, supra.