OPINION OF THE COURT
Joseph D. Mintz, J.
Plaintiff makes application for an order of seizure pursuant to CPLR 7102 prior to the commencement of any action to recover a boat in possession of one or more of the defendants and their agents. Basically, the facts are not in dispute:
On or about June 27, 1981, a 1981 Thunderbird inboard boat and 1981 Mercury inboard motor (hereinafter collateral) were sold by Transit Marine (hereinafter Transit) to Peter Vanderburgh, a resident of Erie County. As part of the purchase, Mr. Vanderburgh signed a security agreement in *38 favor of Transit and a UCC financing statement. In the ordinary course of business, Transit assigned the security agreement to plaintiff and on July 8, 1981, plaintiff filed the financing statement in Erie . County. Vanderburgh continued to make payments on the collateral until about October 21, 1983 when he traded in the collateral to Transit as part of a purchase of a new boat which was financed by Chemical Bank. Payments on the collateral were continued until January 1985, presumably by Transit. Sometime in 1983 or early 1984, Transit sold the collateral to Frederick P. Bauer, III, who presumably purchased without any notice of the security interest or its terms. That sale was financed by the Bank of New York. On or about June 27, 1984, Bauer traded in the collateral to defendant Smith Boys, Inc. (hereinafter Smith Boys) as part of a purchase of a new boat, and Smith Boys obtained a release of the Bank of New York security interest by payment on the balance. Smith Boys presumably purchased without any notice of the security interest or its terms. On or about August 7, 1984, defendant William Burgess (hereinafter Burgess) purchased the collateral, presumably without notice of the security interest or its terms. That purchase was financed through Chemical Bank.
In order to grant an order of seizure pursuant to CPLR 7102, the court must find that it is probable that plaintiff will succeed on the merits. (CPLR 7102 [d] [1].) Here, where the facts are not substantially in dispute, the question before the court is simply who between the plaintiff and the defendants has priority to the collateral under UCC article 9. UCC 9-306 (2) provides: "Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof [by the debtor] unless [his action] was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.” There is no allegation that the series of sales in this case were in any way authorized by the secured party, plaintiff herein. Thus, UCC 9-306 (2) preserves the security interest of the plaintiff in the collateral, which security interest, after default, gives remedies under article 9 to the secured party, unless a provision of article 9 specifically gives greater priority to the defendants. Under the facts and circumstances of this case, two provisions of article 9 must be examined to determine whether they "otherwise provide”: UCC 9-307 (2) and 9-307 (1).
*39 Section 9-307 (2) provides in pertinent part: "In the case of consumer goods a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods.” Defendant Burgess has purchased the collateral for his own personal purpose, for value (see, UCC 1-201), and presumably without knowledge of the security interest. There is no controversy that the collateral here was "consumer goods” under the definition of UCC 9-109 (1) in the hands of defendant Burgess. Thus the only question with regard to the applicability of section 9-307 (2) is whether Burgess purchased prior to filing of a financing statement by plaintiff. Sections 9-401 and 9-402 govern the requirements of financing statements under the UCC. With regard to these sections, defendants urge that the financing statement was deficient, and therefore unenforceable against defendants, in three respects: One, that the financing statement was not filed with the Department of State in Albany; two, that the financing statement was filed in excess of 10 days after Vanderburgh, the original debtor, took possession of the collateral; and three, that the description of the collateral was deficient in that the description did not include the serial numbers of the boat and motor.
UCC 9-401 (1) (a) provides in pertinent part:
"The proper place to file in order to perfect a security interest is as follows:
"(a) when the collateral is * * * consumer goods, then in the office of the filing officer in the county of the debtor’s residence if the debtor is a resident of this state”.
UCC 9-401 (1) (c) provides: "(c) in all other cases, in the department of state and in addition, if the debtor has a place of business in this state and in only one county of this state, also in the office of the filing officer of such county.” (Emphasis added.) There is no allegation that the collateral in the hands of Vanderburgh, the debtor, is anything but consumer goods defined by UCC 9-109 (1). Thus, section 9-401 (1) (a) applies to the filing of the financing statement, and section 9-401 (1) (c), which only applies in cases not covered by section 9-401 (1) (a) and (b), does not apply. The financing statement was filed in Erie County, the county of the debtor’s residence, and was effective under section 9-401 (1) (a). Additionally, there is no requirement that the plaintiff refile in Niagara *40 County, which was the county of location of the collateral, when the collateral was moved to Niagara County, since section 9-401 (3) specifically provides that "[a] filing which is made in the proper place in this state continues effective even though * * * the location of the collateral * * * is thereafter changed.”
Under section 9-302 (1) (d), a purchase-money security interest in a boat, used as consumer goods, is perfected without filing. However, a secured party "may file a financing statement (although filing is not required for perfection).” (Uniform Commercial Code §9-307, comment 3.) Filing a financing statement in the case of consumer goods is not necessary for perfection of the security interest, but to protect the secured party from rights of third parties under section 9-307 (2), in the case of a bona fide purchase of consumer goods, and under section 9-301 (2), in the case of an actual gap lien creditor. Defendants point out that plaintiff did not file within 10 days after the collateral came into the possession of the debtor, Vanderburgh. However, this failure to file within 10 days only defeats the security interest with respect to a lien creditor who acquires a lien before the date of filing. In other words, the 10-day filing requirement for "super-perfection” under section 9-301 (2) applies only to lien creditors and trustees in bankruptcy, not purchasers, and then only with respect to liens which precede the actual filing date. Here, with respect to a purchaser of consumer goods, who acquired the collateral after the date of filing, plaintiff’s failure to file within 10 days of the debtor’s possession is irrelevant.
Section 9-402 provides that a financing statement contain "a statement indicating the types, or describing the items, of collateral.” Nothing in the statute nor in any reported case requires the inclusion of details so specific as to include the serial number. Section 9-110 dealing with sufficiency of description in the security agreement and financing statement, to the extent that section 9-402 does not conflict, does not require the inclusion of a serial number. (In re Sarex Corp., 509 F2d 689 [2d Cir 1975].) Under section 9-402, the description must only be specific enough to put the public on inquiry notice. (Bank of Utica v Smith Richfield Springs, 58 Misc 2d 113 [Sup Ct, Oneida County 1968].) The description herein, "1981 Thunderbird Inboard Boat, 1981 Mercury Inboard Motor,” was sufficient to put the public on inquiry notice, and, thus, satisfied the requirements of section 9-402. As to defendants’ allegation that the serial number of the boat does not *41 match the serial number of the security agreement, the test with respect to a subsequent purchaser or creditor is description in the financing statement; the security agreement is irrelevant. (Allis-Chalmers Credit Corp. v Bank of Utica, 110 Misc 2d 283 [Sup Ct, Onondaga County 1981].) Based on the foregoing, section 9-307 (2) does not protect defendants herein from plaintiffs security interest.
Section 9-307 (1) provides in pertinent part: "A buyer in ordinary course of business (subsection [9] of Section 1-201) * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.” Should any party in the chain of title take free of the security interest, all succeeding buyers likewise take free of the security interest as they acquire full title from their seller. {See, UCC 2-403 [1].)
Section 9-307 (1) contemplates the purchase from inventory of an item free of security interest under a floor plan arrangement, thus allowing the free flow of commerce without greatly impairing the floor plan financer who would have a security interest in proceeds, often chattel paper. (See, White and Summers, Uniform Commercial Code § 25-12 [2d ed 1980].) Although this section is not limited to inventory, a bona fide purchaser only takes free under this section of security interests "created by his seller” (emphasis added). As between a secured party who has perfected by filing and a purchaser who purchases out of his seller’s inventory, with no notice of any security interest, the secured party will prevail unless the purchaser can show (1) he is a buyer in the ordinary course of business; and (2) the security interest was created by his seller; or that he purchased from a party who fulfills the requirements of section 9-307 (1). (Lindsley v Financial Collection Agencies, 97 Misc 2d 263 [Sup Ct, Cattaraugus County 1978].)
The security interest herein was granted by Vanderburgh to Transit Marine, and then assigned by Transit to plaintiff. The collateral was purchased by Transit from Vanderburgh on October 21, 1983. If that sale invokes section 9-307 (1), defendants would prevail. There is no question that the security interest was created by Vanderburgh, but Transit was not a buyer in ordinary course of business under section 1-201 (9), even though purchasing through trade-in is "ordinary” in Transit’s business. Section 1-201 (9) provides in pertinent part: " 'Buyer in ordinary course of business’ means a person who in good faith and without knowledge that the sale to him is in *42 violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind”. Transit was not a buyer in ordinary course of business under this section in purchasing the collateral from Vanderburgh for two reasons: Transit had knowledge that the sale to him was in violation of the security agreement (¶ 10 of the security agreement entered into by Vanderburgh and Transit and assigned by Transit to the plaintiff provided that Vanderburgh not sell the collateral without the prior consent of the secured party) and Vanderburgh was not in the business of selling goods of that kind. See, Hempstead Bank v Andy’s Car Rental Sys. (35 AD2d 35 [2d Dept 1970]) for stringent application of the requirement of "business of selling goods of that kind”. For either or both of these reasons, Transit did not acquire the collateral free of the security interest.
Transit sold the collateral to Bauer sometime in 1983 or 1984. If that sale satisfied the requirements of section 9-307 (1), defendants would prevail. Since Bauer purchased the collateral out of the inventory of Transit, presumably without knowledge of any security interest, in good faith and for value, Bauer was a buyer in ordinary course of business. However, Bauer can only take free of security interests created by his seller. Defendants urge that since this security interest was originally entered into between Vanderburgh and Transit, and only later assigned to plaintiff, the security interest was "created” by both Vanderburgh and Transit and that Bauer could take free of that security interest. The statute gives no definition of "creation” of a security interest, and the only New York case which tests "creation” of a security interest under section 9-307 (1), Makransky v Long Is. Reo Truck Co. (58 Misc 2d 338 [Spec Term, Suffolk County 1968]), deals with the grant of a security interest from a wholly owned subsidiary to the parent and subsequent transfer by the parent.[1] This precise situation, however, has been dealt with in other jurisdictions where the Uniform Commercial Code is in force in the same form as in New York.
In Ocean County Natl. Bank v Palmer (188 NJ Super 509, 457 A2d 1225 [1983]), the court held that a security interest is created only by the party granting the interest (i.e., the *43 debtor). The court based this holding on two rationales: First, that section 9-307 (1) was intended to protect buyers purchasing in the ordinary course out of inventory from the claims of creditors who financed the dealer’s floor plan. In other words, section 9-307 (1) is an exception to the general rule of section 9-306 (2), and in carving out that exception, its creators had that singular purpose in mind. Second, a conclusion to the0 contrary would put an unnatural distinction between two frequent financing arrangements: One, where the seller takes the security interest and then assigns it to its creditor; and two, where the creditor directly provides the financing secured by a security interest. If section 9-307 (1) applied where the seller was a nondebtor party to the security agreement, as is urged here, section 9-307 (1) would apply to the first financing arrangement and not to the second. This differing treatment does not seem well taken. Other jurisdictions are in accord: Commercial Credit Equip. Corp. v Bates (154 Ga App 71, 267 SE2d 469 [1980]); First Am. Bank v Hunning (218 Va 530, 238 SE2d 799 [1977]). Cf. Adams v City Natl. Bank & Trust Co. (565 P2d 26 [Okla 1977]), where the debtor was an agent of the original secured party/seller and was in collusion with his principal and was the agent of the sale to the innocent third party. Based on the rationale of Ocean County and cases in accord, Transit did not create the instant security interest, and section 9-307 (1) is inapplicable.
Finally, defendants raise the question of whether plaintiff should be estopped from enforcing its security interest on the basis of lack of good faith. However, there is no evidence before the court to the effect that plaintiff had any notice of the series of transactions or that plaintiff acted with any less than due diligence following the default of payment under the conditional sales agreement. Under these circumstances, there is no basis for invoking the equitable doctrine of estoppel.
There is no question that the situation presented in this case would result in some hardship for either plaintiff or defendants. The decision herein places innocent purchasers at risk when collateral subject to a security interest comes into possession of a merchant dealing in goods of that kind. A contrary decision would fail to adequately protect lenders who finance consumer goods which are often resold. Under the statutes before the court, however, the exception to the general rule that a security interest continues in collateral despite its sale is a narrow exception which must be strictly applied. The intention of the drafters of the Uniform Commercial Code to limit the exceptions to security interests created *44 by the seller is clear.[2] Until such time as that limitation is lifted or the Legislature passes some other form of protection,[3] purchasers in this situation will have to take care to trace the chain of title and insure the absence of any security interest by checking filings on each and every person in the chain.

. That court held that the security interest was created by the seller because of the identity of parties; the same individual signed as officer of the parent and officer of the subsidiary. The situation therein is clearly not present here.

. Apparently the 1952 draft did not include the language "created by his seller.” (Ocean County Natl. Bank v Palmer, 188 NJ Super 509, 515-516, n 3, 457 A2d 1225, 1229, n 3, citing Dugan, Buyer-Secured, Party Conflicts Under Section 9-307 [1] of the Uniform Commercial Code, 46 U Colo L Rev 333 [1975], and Sexton, Section 9-307 [1] of the U.C.C.: The Scope of the Protection Given a Buyer in Ordinary Course of Business, 9 BC Indus & Com L Rev 985 [1968].) The addition of this language to subsequent drafts manifests a clear intention to so limit the exception.

. E.g., A. Bill No. 3899, 208th Sess (1985), which will require a certificate of title for boats as currently required for motor vehicles.