Reversed and Rendered and Memorandum Opinion filed June 8, 2004









Reversed and Rendered and Memorandum Opinion filed
June 8, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01194-CV

____________

 

CONSECO FINANCE
SERVICING CORP., Appellant

 

V.

 

ROBERT C. LEE AND
ANN E. LEE,
Appellees

 



 

On Appeal from the County
Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 766,142

 



 

M E M O R A N D U M   O P I N I O N

Appellant Conseco Finance Servicing Corp.
appeals from a final judgment (1) granting the summary judgment motion of
appellees Robert C. Lee and Ann E. Lee, (2) denying Conseco=s summary judgment
motion, and (3) ordering that full rights and title to a certain Roadtrek motor
home be vested in the Lees.  Concluding
that the summary judgment proof establishes, as a matter of law, that Conseco
has a valid and perfected security interest in the Roadtrek, which interest
survived Lees= purported purchase, we reverse and render
judgment in favor of Conseco.








FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 1998, Lila Williams
purchased a 1998 Roadtrek 200 Versatile motor home from New World R.V.,
Inc.  The purchase price was $77,224.38,
and Williams financed $63,680.65.  Under
the Retail Installment Contract and Security Agreement, Williams gave a security
interest in the motor home to New World, and the same date New World, by
Virginia Williams, assigned the contract and security agreement to AGreen Tree
Financial Servicing Corporation.@[1]  The Original Texas Certificate of Title,
issued July 3, 1999, lists AGreentree
Financial@ as the first and only lienholder, with
the date of lien being December 21, 1998. 
In November 1999, Green Tree applied for, and was granted, an amended
certificate of authority to transact business under the new name of Conseco
Finance Servicing Corp.

On December 29, 2000, the Lees allegedly
purchased the Roadtrek 200 Versatile motor home from New World for $42,831.80,
including a documentary fee, various other fees, and insurance.  There is nothing to indicate whether or how New
World reacquired the Roadtrek from Lila Williams.

On July 1, 2001, Lila Williams defaulted
on her payments to Conseco; and, in October 2001, Conseco sued her in Hardin
County, Texas, for breach of contract. 
Later the same month, the Lees filed suit against the Texas Department
of Transportation, complaining of its refusal to issue the Lees a certificate
of title, which refusal was primarily based on the fact it was A[u]nable to obtain
properly assigned Negotiable Title.@








In February, 2002, the Lees sued Conseco
seeking a declaration that full, complete and unencumbered title to the motor
home be vested in the Lees.[2]  The Lees alleged (1) they were the owners of
the motor home, which was subject to a title encumbrance asserted in the July
3, 1999, title document; (2) an entity Abelieved to be the
successor-in-interest [sic] to Defendant@ caused a lien to
be recorded, asserted for security purposes as an encumbrance on the motor
home; (3) the asserted lien Ais invalid because
it is asserted by an entity which is incompetent to assert and maintain the
security interest in such title,@ i.e., the
lien is asserted by Green Tree Financial which the Secretary of State indicates
is no longer a viable business entity in Texas; and (4) Conseco=s claim is invalid
because the Lees are buyers in the ordinary course of business as set forth in
Texas Business and Commerce Code (AUCC@) sections 2.403
and 9.320, and as buyers in the ordinary course of business, the Lees take free
of the Conseco=s asserted security interest.

Conseco answered and counterclaimed for
(1) a declaration it had a valid and perfected security interest in the motor home
and (2) and an order requiring the Lees to give possession of the motor home to
Conseco.[3]  In support of its affirmative defenses as
well as its counterclaim, Conseco relied on the Certificate of Title Act.[4]








The parties filed competing motions for
summary judgment.  Conseco argued the
Certificate of Title Act was the relevant statute, Conseco had fully complied
with the perfection requirements of the Act, and therefore all subsequent
buyers of the collateral (the Roadtrek), including the Lees, were subject to
Conseco=s security
interest in the collateral.  Conseco also
argued UCC sections 2.403 and 9.320 did not apply.[5]  Finally, Conseco argued, because its
perfected interest and lien had not been paid or satisfied, Conseco was
entitled to possession of the collateral.

In support of its motion, Conseco attached
(1) the Retail Installment Contract and Security Agreement executed between
Lila Williams and New World on December 21, 1998, which contained a paragraph
indicating assignment of the contract to Green Tree Financial Servicing
Corporation and (2) the Texas Certificate of Title to the Roadtrek, showing
Lila Williams as owner and AGreentree
Financial@ as the first and only lienholder, with
the date of the lien as December 21, 1998. 
Conseco=s summary judgment proof also included the
following: (1) documents indicating the name change from Green Tree to Conseco,
effective November 1, 1999, (2) a copy of Conseco=s pleadings in its
lawsuit against Lila Williams, along with the notice of default from Conseco to
Lila Williams, dated August 17, 2001, and (3) affidavits of its litigation
specialist and attorney, describing in part the preceding documents and the
status of Conseco=s litigation.

In their motion for summary judgment, the
Lees argued they were innocent purchasers and buyers in the ordinary course of
business, who take free of a security interest created by a seller.  Citing UCC section 2.403, they also argued
title to the motor home passed to them, and failure to provide title violated
Texas law.  In response to Conseco=s motion for
summary judgment, the Lees argued a fact issue existed as a result of Green
Tree=s, rather than
Conseco=s name being on
the Certificate of  Title.








The Lees= summary judgment
proof consisted entirely of the Lees= affidavits and
that of their attorney, Michael Lee.[6]  Both Robert and Ann stated, in part, as
follows:

2.       On December 29, 2000, Robert C. Lee and
Ann E. Lee purchased from New World R.V., Inc. a 1998 Roadtrek, Model 200
Versatile, VIN#1GBHG31J2V1108343.

3.       On December 29, 2000, New World R.V.,
Inc. was a dealer in the business of selling motor homes.

4.       The motor home purchased by the Lees [the
1998 Roadtrek vehicle, VIN#1GBHG31J2V1108343] was a good.

5.       Robert C. Lee and Ann E. Lee purchased
the good [the 1998 Roadtrek vehicle, VIN#1GBHG31J2V1108343] for good and
valuable consideration from New World R.V., Inc.

6.       Robert C. Lee and Ann E. Lee paid
$42,831.80 including a documentary fee and various fees and insurance
purportedly regarding transfer of title on the good.

7.       Robert. C. Lee and Ann E. Lee had no
knowledge or awareness of any transaction by or between Conseco, Greentree
Financial, [Conseco=s successor [sic] in interest] or
any other entity and/or person and New World R.V., Inc.

8.       Robert C. Lee and Ann E. Lee purchased
the good [the 1998 Roadtrek vehicle, VIN#1GBHG31J2V1108343] in good faith.

9.       New World R.V., Inc. was a merchant who
deals in goods at the time which Robert C. Lee and Ann E. Lee purchased,
specifically including the good at issue here [the 1998 Roadtrek vehicle,
VIN#1GBHG31J2V1108343].

 

Conseco objected to the Lees= summary judgment
proof, and moved to strike the affidavits. 
The trial court did not rule on Conseco=s objections or
motion to strike.

The trial court denied Conseco=s motion for
summary judgment and rendered final judgment ordering that full rights, titles,
and powers to the Roadtrek motor home be vested in the Lees and that they enjoy
possession and quiet title to the vehicle. 
The trial court further awarded the Lees attorney=s fees of
$8,493.75.








DISCUSSION

Introduction and Standard of Review

Conseco presents the following issue for
review: Whether the trial court erred by ordering that the Lees, as purported
subsequent purchasers of a motor home, were vested with full rights, title, and
possession to the motor home, instead of ordering that Conseco, the holder of
the unpaid and perfected security interest in the motor home under the Texas
Certificate of Title Act, was entitled to possession of its collateral.[7]  Thus, Conseco challenges both the grant of
Lees= summary judgment
motion and the denial of its own.

When the parties file competing motions
for summary judgment, and the trial court grants one motion and denies the
other, this court may consider the propriety of the denial as well as the
grant.  Lidawi v. Progressive County
Mut. Ins. Co., 112 S.W.3d 725, 729 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  If the issue
raised is based on undisputed and unambiguous facts, we may determine the
question presented as a matter of law.  Id.  We may then either affirm the judgment or
reverse and render the judgment the trial court should have rendered, including
one that denies both motions.  Id.  If, however, resolution of the issues rests
on disputed facts, summary judgment is inappropriate, and we should reverse and
remand for further proceedings.  Id.
at 729B30.








The movant for summary judgment has the
burden to show there is no genuine issue of material fact and it is entitled to
judgment as a matter of law.  Nixon v.
Mr. Prop.  Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  When deciding whether
there is a disputed material fact issue precluding summary judgment, the
appellate court must take as true all evidence favorable to the non‑movant.
Id. at 548B49. 
The reviewing court must indulge every reasonable inference in favor of
the non‑movant and resolve any doubts in its favor.  Id. at 549.

A plaintiff moving for summary judgment
must conclusively prove all essential elements of its claim.  See MMP, Ltd. v. Jones, 710 S.W.2d 59,
60 (Tex. 1986); Geiselman v. Cramer Fin. Group, Inc., 965 S.W.2d 532,
535 (Tex. App.CHouston [14th Dist.] 1997, no writ).  A defendant moving for traditional summary
judgment assumes the burden of showing as a matter of law the plaintiff has no
cause of action against him.  Levesque
v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston [14th
Dist.] 2001, no pet.).  Traditional
summary judgment for a defendant is proper only when the defendant negates at
least one element of each of the plaintiff=s theories of
recovery, or pleads and conclusively establishes each element of an affirmative
defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997).

We review declaratory judgments under the
same standards as other judgments and decrees. 
Lidawi, 112 S.W.3d at 730; See Tex. Civ. Prac. & Rem. Code Ann. ' 37.010 (Vernon
1997).  We look to the procedure used to
resolve the issue at trial to determine the standard of review on appeal.  Lidawi, 112 S.W.3d at 730.  Here, because the trial court resolved the
case on competing motions for summary judgment, we review the propriety of the
trial court=s denial of the declaratory judgment under
the same standards we apply to the summary judgment.  See id.

Analysis 

1.  Creation of Conseco=s Security
Interest in the Roadtrek








The Certificate of Title Act is found in
Chapter 501 of the Transportation Code.  See
Tex. Transp. Code Ann. ' 501.001 (Vernon
1999).  Section 501.111(a) of the Act
provides:  AExcept as provided
by Subsection (b), a person may perfect a security interest in a motor vehicle
that is the subject of a first or subsequent sale only by recording the
security interest on the certificate of title as provided by this chapter.@  Tex.
Transp. Code Ann. ' 501.111(a) (Vernon 1999).[8]

          UCC section 9.311 refers to the
Certificate of Title Act, and provides in relevant part:

(a) Except
as otherwise provided in Subsection (d), the filing of a financing statement is
not necessary or effective to perfect a security interest in property subject
to:      

.
. .

(2) the following statutes of this
state:  Chapter 501, Transportation Code;
. . .

.
. .

 

(b) Compliance with the
requirements of a statute, regulation, or treaty described in Subsection (a)
for obtaining priority over the rights of a lien creditor is equivalent to the
filing of a financing statement under this Chapter.  Except as otherwise provided in Subsection
(d) and Sections 9.313 and  9.316(d) and
(e) for goods covered by a certificate of title, a security interest in
property subject to a statute, regulation, or treaty described in Subsection
(a) may be perfected only by compliance with those requirements,
and a security interest so perfected remains perfected notwithstanding a change
in the use or transfer of possession of the collateral.

.
. .

(d) During any period in which
collateral subject to a statute specified in Subsection (a)(2) is inventory
held for sale or lease by a person or leased by that person as lessor and that
person is in the business of selling goods of that kind, this section does not
apply to a security interest in that collateral created by that person.

 

Tex. Bus. & Com. Code
Ann. ' 9.311 (Vernon
Supp. 2004) (emphasis added).








          The uncontroverted summary judgment
proof supports Conseco=s representation that it fully complied
with the Certificate of Title Act, Texas Transportation Code chapter 501, and
perfected its security interest in the motor home by having that interest recorded
on the Certificate of Title.  On appeal,
the Lees do not dispute this representation.

2.  Status of Conseco=s Security
Interest on Transfer of the Roadtrek to the Lees.

Citing UCC section 9.311(b), Conseco further
contends its security interest remains in the motor home despite transfer of
the collateral to the Lees.  The Lees
dispute this latter contention.

Buyers in
the ordinary course.  The Lees contend
they were buyers in the ordinary course of business as defined by  UCC section 1.201(9):

ABuyer in ordinary course of
business@ means a person that buys goods in
good faith, without knowledge that the sale violates the rights of another
person in the goods, and in the ordinary course from a person, other than a
pawnbroker, in the business of selling goods of that kind.  A person buys goods in the ordinary course if
the sale to the person comports with the usual or customary practices in the
kind of business in which the seller is engaged or with the seller=s own usual or customary practices.
. . . 

 

Tex. Bus. & Com. Code
Ann. ' 1.201(9) (Vernon
Supp. 2004).[9]

The Lees then contend they took free of
Conseco=s security
interest under UCC section 9.320(a), which provides in relevant part:  A[A] buyer in
ordinary course of business . . . takes free of a security interest
created by the buyer=s seller, even if the
security interest is perfected and the buyer knows of its existence.@  Tex.
Bus. & Com. Code Ann. ' 9.320(a) (Vernon
2002) (emphasis added).  Conseco,
however, contends UCC section 9.320 is inapplicable because New World did not
create the security interest in the Roadtrek. 
We agree.








We assume, without deciding, that the Lees= summary judgment
proof establishes they fall within the definition of a buyer in the ordinary
course of business under UCC section 1.201(9). 
The Lees, however, cannot avail themselves of UCC section 9.320(a)
because, although New World (the Lees= seller) may have
been a party to the transaction giving rise to Conseco=s security
interest in the Roadtrek, New World did not, as a debtor, create the security
interest in the Roadtrek.

On virtually identical facts to those at
issue in the present case, the New Jersey appellate court observed UCC section
9-307(1), the precursor to section 9.320(a), was A>intended to
protect buyers in the ordinary course from the lien claims of creditor who have
financed Afloor-plan@ (inventory)
arrangements for the dealer.=@  Ocean County Nat=l Bank v. Palmer, 457 A.2d 1225,
1228 (N.J. Super. Ct. App. Div. 1983) (quoting Commercial Credit Equip.
Corp. v. Bates, 267 S.E.2d 469, 472 (Ga. Ct. App. 1980)).[10]  The New Jersey court then concluded, A>security interest
created by his seller= as used in ' 9-307(1),
refers only to a security interest given by the seller as debtor and
does not include any other security interest even though it was created in an
agreement to which the seller was a non-debtor party.@  Id. (emphasis added) (citing First.
Am. Bank of N. Palm Beach v. Hunning, 238 S.E.2d 799, 800 (Va. 1977) (per
curiam)); see also Vacura v. Haar=s Equip., Inc., 364 N.W.2d 387,
393 (Minn. 1985) (stating same and citing Ocean County Nat=l Bank, 457 A.2d at
1228).

Lila Williams was the debtor in the only
security agreement of record to which New World was arguably a party.  Conseco=s security
interest was not created by New World as debtor.  UCC section 9.320(a) does not permit the Lees
to take the Roadtrek free from Conseco=s security
interest.








Entrusting.  The Lees also rely on section 2.403, which
provides in part:

(a) A purchaser of goods acquires
all title which his transferor had or had power to transfer except that a
purchaser of a limited interest acquires rights only to the extent of the
interest purchased.  A person with
voidable title has power to transfer a good title to a good faith purchaser for
value. . . . 

(b) Any entrusting of possession of
goods to a merchant who deals in goods of that kind gives him power to transfer
all rights of the entruster to a buyer in ordinary course of business.

.
. .

(d) The rights of other purchasers
of goods and of lien creditors are governed by the chapters on Secured
Transactions (Chapter 9) and Documents of Title (Chapter 7).

 

Tex. Bus. & Com. Code
Ann. ' 2.403(a), (b),
(d) (Vernon 1994).  Conseco argues
section 2.043 is inapplicable because, when New World sold the Roadtrek to the
Lees, New World had no title to the Roadtrek, not even a voidable one.

The Lees, however, suggest New World Aentrusted@ the Roadtrek to
Lila Williams.  They represent: (1) prior
to the date of the sale to Lila Williams, the Roadtrek Ahad been fully
entrusted and full title and right to possession of the vehicle resided in a
merchant who dealt in RV vehicles of the type and condition of the vehicle in
question here@; (2) through the sale to Lila Williams, ANew World
entrusted the vehicle, with the acquiescence of the predecessor to Conseco to
Ms. Lila F. Williams.@

The first representation is irrelevant to
the present controversy; the second is conclusory and without support in the
summary judgment proof.  Moreover, the
documents of record show Lila as title owner of the Roadtrek as of December 21,
1998; and, in their affidavits, the Lees state they purchased the Roadtrek from
New World.  Based on this summary
judgment proof, if any Aentrusting@ was involved in
the present case, it was Lila who entrusted the Roadtrek to New World.  The uncontroverted summary judgment proof
that Conseco instituted suit against Lila, but was unable to locate and serve
her, supports the inference Conseco did not acquiesce in any such entrusting.








If Lila did entrust the Roadtrek to New
World, New World could have transferred to the Lees only the rights which Lila
had.  See Tex. Bus. & Com. Code Ann. ' 2.403(b) (Vernon
1994); Pfluger v. Colquitt, 620 S.W.2d 739, 741 (Tex. Civ. App.CDallas 1981, writ
ref=d n.r.e.) (stating
section 2.403(b) phrase, empowering merchant Ato transfer all
rights of the entruster,@ is intended to give merchant same power
to transfer which the owner of goods can exercise himself, although the owner
may not actually have authorized merchant to make such a transfer).  Thus, the Lees would have taken subject to
Conseco=s security
interest.  See Eldon H. Reiley, Guidebook to Security
Interests in Personal Property ' 15:18 (online
2003 ed.) (explaining, under UCC 2-403(2), when (1) Owner=s rights were
subject to security interest  perfected
by Bank by notation on certificate of title, (2) Owner entrusted vehicle to
Dealer,  and (3) Buyer in ordinary course
purchased from Dealer to whom Owner intrusted vehicle; then rights acquired by
Buyer remain subject to Bank=s security
interest).  UCC section 2.403 does not
permit the Lees to take the Roadtrek free from Conseco=s security
interest.

Alleged
conflict between the Certificate of Title Act and the UCC.  Finally, the Lees cite Transportation Code
section 501.005, which provides:  AChapters 1B9, Business &
Commerce Code, control over a conflicting provision of this chapter.@  Tex.
Transp. Code Ann. ' 501.005 (Vernon 1999).  Having assumed the Lees qualified as buyers
in the ordinary course, but also having concluded that neither section 9.320(a)
nor section 2.403 applies to the facts of this case, we need not consider
Transportation Code section 501.005.

Based on the preceding analysis, we
conclude the trial court erred in granting the Lees= motion for
summary judgment.  We now turn to the
question of whether the trial court should have granted Conseco=s motion for
summary judgment and ordered Conseco was entitled to possession of the
Roadtrek.








3. Conseco=s Right to
Possession of the Roadtrek.

As discussed above, Conseco=s security
interest in the Roadtrek survived the Lees= purported
purchase.  Also, it is undisputed that
the note, which Conseco=s lien secures, is in default.  Under the terms of the Retail Installment
Contract and Security Agreement executed between New World and Lila Williams,
in the event of Lila Williams=s default, the
holder of the security interest could Aimmediately take
possession of the Property by legal process or self-help. . . . [and] may then
sell the Property and apply what [it receives] as provided by law to [its]
reasonable expenses and then toward [Lila Williams] obligations.@

Nevertheless, the Lees argue the following
fact issues preclude rendition of judgment in Conseco=s favor: (1)
issues regarding the creation of the lien and the entrustment of the
collateral, including (a) whether New World held title to the collateral and
(b) whether the collateral was inventory collateral; (2) issues regarding the
relationship between New World and Conseco based on the lack of any summary
judgment proof of the separate agreement by which New World assigned the Retail
Installment Contract and Security Agreement to Greentree (Conseco); and (3)
fact issues regarding disposition of the proceeds of New World=s sale of the
Roadtrek to the Lees.  Additionally, the
Lees argue Conseco has not established the basis for the remedy it seeks
because (1) it has provided no proof of the total amount of the payments it
received on the loan and (2) the Retail Installment Contract and Security
Agreement Aspecifically calls for the adjudication of
the very issues presented here and the enforcement of its security interest to
begin by the initiation of arbitration proceedings.@

The first and second set of Afact issues@ rest on
speculation, without any support in the summary judgment proof, that New World=s sale of the
Roadtrek to Lila Williams was something other than what it appears to be: a
sale by a dealer, from the dealer=s inventory, to a
consumer.  Based on the summary judgment
proof of record, the nature of New World=s sale to Lila is
relevant to New World=s subsequent sale to the Lees only because
Lila created a security interest in the vehicle in favor of Conseco.








The third set of fact issues and the
contention Conseco has not established the basis for its requested remedy rest
mainly on the premise that a secured party is not entitled to possession if (1)
it has collected part of the amount owed on the secured loan or (2) it has a
cause of action against the dealer.[11]  The Lees= position in this
regard runs counter to provisions regarding possession of collateral, as found
in the Retail Installment Contract and Security Agreement and the UCC.  As set forth above, the Contract specifically
provides that, on default, Conseco may take possession of the collateral by
legal process or self-help and may then sell the collateral and apply the
proceeds to its expenses and the remaining obligation.  UCC section 9.609 also provides AAfter default, a
secured party . . . may take possession of the collateral. . . .@  Tex.
Bus. & Com. Code Ann. ' 9.609(a)(1)
(Vernon  2002).  The secured party may do so Apursuant to
judicial process.@  Id.
' 9.609(b)(1).

          The
Lees= contention
Conseco has not established the basis for its requested remedy also rests on
the arbitration clause in the Retail Installment Contract and Security
Agreement.  That clause provides:

All disputes, claims, or controversies arising from or
relating to this Contract or the relationships which result from this Contract,
or the validity of this arbitration clause or the entire Contract, shall be
resolved by binding arbitration by one arbitrator selected by us with your
consent.








The parties agree and understand that they choose
arbitration instead of litigation to resolve disputes.  The parties understand that they have a right
or opportunity to litigate disputes through a court, but that they prefer to
resolve their disputes through arbitration, except as provided herein.  THE PARTIES VOLUNTARILY AND KNOWINGLY
WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER
THIS CLAUSE OR PURSUANT TO A COURT ACTION BY US (AS PROVIDED HEREIN).  The parties agree and understand that all
disputes arising under case law, statutory law, and all other laws including,
but not limited to, all contract, tort, and property disputes, will be subject
to binding arbitration in accord with this agreement.  The parties agree and understand that the
arbitrator shall have all powers provided by the law and the Contract.  These powers shall include all legal and
equitable remedies, including, but not limited to, money damages, declaratory
relief, and injunctive relief.  Notwithstanding
anything hereunto the contrary, we retain an option to use judicial or
non-judicial relief to enforce a security agreement relating to the property,
goods or services secured in a transaction underlying this arbitration
agreement, to enforce the monetary obligation secured by the property, goods or
services or to foreclose on the property, goods or services.  Such judicial relief would take the form of a
lawsuit.  The institution and
maintenance of an action for judicial relief in a court to foreclose upon any
collateral, to obtain a monetary judgment or to enforce the security agreement,
shall not constitute a waiver of the right of any party to compel arbitration
regarding any other dispute or remedy subject to arbitration in this Contract,
including the filing of a counterclaim in a suit brought by us pursuant to this
provision.  (Second emphasis added.)

 

Thus, even were we to assume this clause
extended rights to the Lees, who were not parties to the contract, the clause
sets forth an exception when the secured party is seeking judicial relief to
obtain possession of the collateral.  In
short, no genuine issues of material fact preclude rendition of judgment
ordering that Conseco take possession of the Roadtrek.

CONCLUSION

We conclude the summary judgment proof
establishes, as a matter of law, that Conseco has a valid and perfected
security interest in the Roadtrek, which interest survived Lees= purported
purchase.  We also conclude Conseco has,
as a matter of law, established  its
right to possess the Roadtrek. 
Accordingly, we sustain Conseco=s first issue.








Having sustained Conseco=s first issue,
we  reverse and render judgment that
Conseco has a valid security interest in, and is entitled to possession of, the
Roadtrek.[12]

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed June 8, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  The record
does not indicate whether Lila Williams and Virginia Williams are related.





[2]  The Lees also
sought attorneys= fees and all other relief to which they might show
themselves entitled.





[3]  In its second
amended original answer, filed after the motions for summary judgment discussed
below, Conseco also sued for conversion and moved for sanctions against the
Lees and their attorney.  On appeal, the
parties do not contend these issues were before the court on summary
judgment.  Despite the court=s having rendered a final judgment Adispos[ing] of all parties, claims, and causes of
action,@ neither party raises any appellate issues concerning
the conversion counter claim or the motion for sanctions. 





[4]  See Tex. Transp. Code Ann. ' 501.001B.159
(Vernon 1999 and Supp. 2004).





[5]  See Tex. Bus. & Com. Code Ann. ' 2.403 (Vernon 1994) (regarding power to transfer,
good faith purchase of goods, and Aentrusting@); Tex. Bus.
& Com. Code Ann. ' 9.320(a) (Vernon 2002) (regarding buyers in ordinary
course of business).  In 1999, the
legislature substantially revised Chapter 9 of the Texas Business and Commerce
Code (UCC).  See Act of May 17,
1999, 76th Leg., R.S., ch. 414, ' 1.01,
1999 Tex. Gen. Laws 2639B2736.  For most
purposes, the effective date of the act was July 1, 2001.  See id. '
3.01(a), 1999 Tex. Gen. Laws at 2747.   AExcept as otherwise provided [in article 3 of the
Act], this Act applies to a transaction or lien within its scope, even if the
transaction or lien was entered into or created before this Act takes effect.@  Id. ' 3.02(a), 1999 Tex. Gen. Laws at 2747.  But see Dota v. First Nat=l Bank of El Campo, 288 B.R. 448, 458 n.21 (S.D. Tex. 2003) (stating prior version of
Code applies to case because Afacts@ occurred prior to effective date of new
version).  The Act also provides that it Adoes not affect an action, case, or proceeding
commenced before the effective date of this Act.@  Id. '
3.02(c), 1999 Tex. Gen. Laws at 2748.  
The lien at issue was created December 21, 1998; the lawsuit was
commenced February 1, 2002.  Both parties
cite Revised Chapter 9, and neither contends the prior law applies.  Moreover, the revisions do not involve
substantive changes relevant to the present lawsuit.  Accordingly, we cite to the revised
provisions.





[6]  Michael=s affidavit addressed only the issue of attorney=s fees.





[7]  As issue two,
Conseco presents the following:   Whether
a lien on a Texas Certificate of Title to a motor home continues to be valid if
the name of the lienholder noted on the title changed as shown by the Texas
Secretary of State Amended Certificate of Authority and the State of Texas
Lending License.  The Lees raised this
issue as a defense to Conseco=s motion for summary judgment, not as reason to grant
their own.  Furthermore, although on
appeal the Lees argue there are factual issues that preclude granting Conseco=s motion for summary judgment, the name change is not
one of them.  Accordingly, we conclude it
is not necessary to address Conseco=s issue
two.





[8]  The subsection
(b) exception applies to a security interest in inventory:  AA person
may perfect a security interest in a motor vehicle held as inventory by a
person in the business of selling motor vehicles only by complying with Chapter
9, Business & Commerce Code.@  Tex. Transp. Code Ann. ' 501.111(b) (Vernon 1999).





[9]  The
legislature amended Texas Business and Commerce Code section 1.201(9) in 1999
and 2003, during and subsequent to the events giving rise to this lawsuit.  See Act of May 17, 1999, 76th Leg.,
R.S., ch. 414, ' 2.12, 1999 Tex. Gen. Laws 2639, 2737B38;  Act of May
22, 2003, 78th Leg., R.S., ch. 542, ' 1, sec.
1.201, 2003 Tex. Gen. Laws 1840, 1842B43.  The amendments, however, did not involve
substantive revisions relevant to the present lawsuit.  Accordingly, we cite the current version.





[10]  Under the Code
Construction Act, we are required to construe uniform acts included in a code Ato effect its general purpose to make uniform the law
of those states that enact it.@  Tex. Gov=t Code Ann. ' 311.028 (Vernon 1998); see MBank El Paso, N.A. v.
Sanchez, 836 S.W.2d 151, 153B54 (Tex.
1992) (citing out‑of‑state cases in construing UCC provision); Fetter
v. Wells Fargo Bank Texas, N.A.,  110
S.W.3d 683, 690B91 (Tex. App.CHouston
[14th Dist.] 2003, no pet.) (same).





[11]  Other than
referring to a footnote in Conseco=s brief,
which cites Transportation section 503.033, the provision dealing with surety
bonds for dealers, the Lees cite no authority to support their claim Conseco
could recover against New World.  Section
503.033(d)  provides:

 

A person may recover against a surety bond or other
security if the person obtains against a person issued a motor vehicle dealer
general distinguishing number or a wholesale motor vehicle auction general
distinguishing number a judgment assessing damages and reasonable attorney's
fees based on an act or omission on which the bond is conditioned that occurred
during the term for which the general distinguishing number was valid.

 

Tex. Transp. Code Ann. ' 503.033(d) (Vernon 1999).  Under subsection (b) a bond must be
conditioned, in part, on Athe transfer by the applicant of good title to each
motor vehicle the applicant offers for sale.@  Id. '
503.033(b)(2)(B).





[12]  In its prayer
for relief in this court, Conseco requests the case be remanded to the trial
court for damages and an award of attorneys= fees
for Conseco.  Conseco presents no
authority and develops no argument in support of this request.  We decline to consider it.  See Tex.
R. App. P. 38.1(h) (stating appellant=s brief
is to contain clear and concise argument with appropriate citations to
authorities); Emery v. Rollins, 880 S.W.2d 237, 238 (Tex. App.CHouston [14th Dist.] 1994, writ denied) (stating
points of error must be supported by argument and authorities, and if not so
supported, are waived).