## Walden v. Mercedes Benz Credit Corp.

*Alan M. Bredt,* for plaintiff.

*Stephen G. Harvey* and *Stacy I. Georgelis,* for defendant.

SHEPPARD JR., *J.,* April 27, 2005—Plaintiff, Michael Walden, has moved to preclude defendant, Mercedes Benz Credit Corp. (MBCC), from repossessing a certain Mercedes Benz automobile which Walden claims to own, and in which MBCC claims to have a security interest.

The car was originally purchased from a Mercedes Benz dealer in California by an individual whom the parties refer to as Customer. Customer financed her purchase of the car through MBCC and granted MBCC a security interest in the car. Customer subsequently transferred[1] the car to a California auto dealership known as Duty Free Car Payment Inc. Walden purchased the car from Duty Free pursuant to an installment sales contract under which he continued to make payments until Duty Free ceased to exist. Customer did not continue to make her installment payments to MBCC once the car ceased to be in her possession. MBCC now claims that Customer may have obtained the car from the Mercedes dealership fraudulently and that she and Duty Free may have been part of an auto theft ring.[2] As a result, MBCC claims that Walden does not have valid title to the car and that MBCC is entitled to possession of the car due to its perfected security interest.

---

1. It is not clear whether the "transfer" was a gift, sale, consignment, or some other kind of transaction.

2. MBCC has not offered any evidence that Customer or the car was part of this alleged scam, nor is the hearsay evidence of Duty Free's involvement and its agents' indictments sufficient for this court to conclude that the alleged auto thefts actually occurred.

Since Customer entrusted possession of the car to Duty Free, which was "a merchant who deals in goods of that kind," Duty Free had "the power to transfer all rights of [Customer] to a buyer in ordinary course of business[3] ... even though the disposition of [the car] by [Duty Free] was such as to be larcenous under criminal law." 13 Pa.C.S. §2403(b), (c).[4] In addition, since the car was originally "delivered [to Customer] under a transaction of purchase, [Customer] ha[d] such power [to transfer good title to a good faith purchaser for value] even though ... the delivery [to Customer may have been] procured through fraud punishable as larcenous under the criminal law." 13 Pa.C.S. §2403(a)(4). Furthermore, the "agreement between [Customer] and [MBCC] which prohibits a transfer of [Customer's] rights in [the car] or makes the transfer a default does not prevent the transfer

---

3. " 'BUYER IN ORDINARY COURSE OF BUSINESS.' A person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged, or with the seller's own usual or customary practices. ... A buyer in ordinary course of business may buy for cash, by exchange of other property or on secured or unsecured credit and may acquire goods or documents of title under a preexisting contract for sale." 13 Pa.C.S. §1201. Mr. Walden is a buyer in ordinary course of business from Duty Free. Likewise, he was a good faith purchaser for value.

4. Since all of the relevant transactions took place in California, California law should be applied to determine the legal significance of those transactions. However, because there is no conflict between the relevant provisions of the California U.C.C. and the comparable Pennsylvania U.C.C. provisions, the court will cite to the latter, which are more familiar.

from taking effect." 13 Pa.C.S. §9401. Therefore, Customer and/or Duty Free were capable of transferring good title to the car to Walden, even if one or both of them was guilty of theft with respect to the car, but that does not mean that they were also capable of transferring clear title.

The question is whether Duty Free's transfer to Walden extinguished MBCC's security interest in the car, or if Walden took title subject to the security interest of MBCC. Normally, "a buyer in the ordinary course of business . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." 13 Pa.C.S. §9320(a). However, MBCC's security interest was not created by Duty Free (the buyer's seller), but rather by Duty Free's transferor, Customer. Therefore, Walden cannot claim the benefit of section 9-320,[5] and MBCC's

---

5. Numerous courts and commentators have "criticize[d] section 9-320(a)'s harsh effects because they cannot identify a tenable policy to support it. Despite the criticism, the section stands virtually unchanged since the Code's inception in September 1951." Comment: The Article 9 Buyer's Seller Rule & the Justification for Its Harsh Effects, 83 Or. L. Rev. 289, 290 (spring, 2004). Section 9-320 attempts to strike a fair balance between the interests of innocent purchasers and the interests of secured lenders. See *id.* at 310 ("The mere fact that this rule fails to protect every single buyer in the ordinary course of business is not a failure to facilitate commercial transactions because a strict application would hamper the facilitation to a greater degree by making credit transactions more dangerous [to lenders]"). Furthermore, where, as here, the secured party's interest is noted on the title, "then the rule's harsh effects are in order because it is not burdensome for a buyer to look at the title, which one would expect a seller to possess if it were really intending to make a sale." *Id.* at 311. But see Nowka, section 9-320(a) of revised article 9 and the Buyer in Ordinary Course

"security interest . . . continues in [the car] notwithstanding sale . . . or other disposition thereof . . . ." 13 Pa.C.S. §9315. See *Gordon v. Hamm*, 63 Cal. App. 4th 1324, 74 Cal. Rptr.2d 631 (2d Dist. 1998) (purchaser of used motor home from dealer took subject to security interest created by original owner); *Marine Midland Bank v. Smith Boys Inc.*, 129 Misc.2d 37, 492 N.Y.S.2d 355 (Erie Cty. 1985) (purchaser of used boat from dealer took subject to security interest created by original owner); *Ocean County National Bank v. Palmer*, 188 N.J. Super. 509, 457 A.2d 1225 (1983) (purchaser of used boat from dealer took subject to security interest created by original owner, even though dealer had been involved in obtaining that security interest); *Martin Bros. Implement Co. v. Diepholz*, 109 Ill. App.3d 283, 440 N.E.2d 320 (4th Dist. 1982) (purchaser of used bulldozer from dealer took subject to security interest created by original owner). Cf. *Schultz v. Bank of the West, CBC,* 325 Or. 81, 934 P.2d 421 (1997) (purchaser of used motor home from dealer took free and clear of security interest created by original owner where original owner consigned motor home to dealer); *C&J Leasing II, Ltd. Partnership v. Agri Financial Services Inc.*, 439 N.W.2d 210 (Iowa 1989) (purchaser of used farm equipment from dealer took free of security interest created by original owner where dealer was instrumental in creating original owner's security interest and original owner left equipment in dealer's pos-

___

of Pre-Encumbered Goods: Something Old and Something New, 38 Brandeis L.J. 9 (fall 1999) (arguing that, by stretching the doctrine of estoppel, one could prevent the secured party from enforcing its security interest in goods that its debtor had transferred to a dealer in goods of that kind).

session); *Adams v. City National Bank & Trust Co. of Norman,* 565 P.2d 26, 31 (Okla. 1977) ("Nothing in the comments to article 9 required the 'created by [buyer's] seller' limitation to be an insurmountable barrier to good faith acquisition of pre-encumbered property from a dealer who himself was instrumental in creating the encumbrance and conflict").

Since Walden purchased the car subject to MBCC's perfected security interest, and there was a default by Customer on the loan underlying the security interest, MBCC may repossess the car. See 13 Pa.C.S. §9609. However, since Walden has an ownership interest in the car, he is entitled to notice of disposition of the sale, to redeem the car before disposition, and to an accounting for the surplus, if any, after disposition. See *id.* at section 9623. See also, *Security Pacific National Bank v. Goodman,* 24 Cal. App. 3d 131 (2d Dist. 1972).

## CONCLUSION

For all the foregoing reasons, plaintiff's renewed motion for preliminary injunction is denied.

## ORDER

And now, April 27, 2005, upon consideration of plaintiff's renewed motion for injunction, defendant Mercedes Benz Credit Corp.'s response in opposition, the briefs in support and opposition, all other matters of record, and in accord with the opinion being issued contemporaneously, it is hereby ordered that the motion is denied.